## THE SCOTLAND.[1]

### OLSEN v. THE SCOTLAND.

*(District Court, S. D. New York. May 27, 1890.)*

SEAMEN—LIABILITY OF SHIP TO CARE FOR INJURED.

> A sailor, in boarding his ship at Antwerp, fell and dislocated his shoulder. Although he soon afterwards informed the master of the accident, he received no attention at the time, and was not put ashore at Flushing, or at the Downs, as he requested, at both of which places the vessel stopped, but was taken on the voyage to New York, where, on going to the hospital, resection was found necessary in order to reduce the dislocation, to his permanent injury. *Held*, that the master had failed in the ordinary maritime obligation to provide for the seaman's hurts while in the service of the ship, and that the vessel was liable for the damages, which were fixed at $1,250.

In Admiralty. Action to recover damages for personal injuries.

*Wing, Shoudy & Putnam* and *Mr. Burlingham*, for libelant.

*Goodrich, Deady & Goodrich*, for claimant.

BROWN, J. The libelant shipped as able seaman in January last at the port of Antwerp. While mounting the ladder to go aboard with a

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

bag of clothes on his back, he lost his balance, fell into the water, and, as he claims, dislocated his left shoulder. At the muster of the men soon after, the libelant did not appear. He complained that his shoulder was out of joint, and that it gave him great pain, unless his arm was held still in a favored position. He testifies that he explained this to the captain a few hours after he got on board, but was answered very roughly, and without further attention; that afterwards, when the vessel stopped two days at Flushing, and again subsequently at the Downs, where the vessel was detained two weeks by bad weather, he requested to be put ashore for treatment, and that the captain did not make any examination of his arm until two or three days after they had got to sea, when he declared that it was an old wound, and that he could do nothing for it. Some liniment was given him, and he was set at light work. On arrival at New York, some two months afterwards, he went to the hospital, where experienced surgeons were unable to put the arm in place. Subsequently an operation by resection was performed, a portion of the fibrous deposit in the socket was removed, about an inch of the upper portion of the bone sawed off, and the arm thus put in place. The surgeons who performed the operation estimated that the wound or displacement might have occurred at any time between six weeks and six months before the operation. An eminent surgeon for the defense judged, from the description given by the operators, that the displacement could not be less than a year old. The defense is that there was no neglect in treatment on the part of the ship, and that the displacement was not occasioned by the fall, but was a previous injury. In the discordant testimony of the surgeons, who are perhaps equally eminent, superior weight is, I think, due to him who speaks from observation of the case itself, rather than to him who speaks from a mere description of it; particularly when, as here, the description was not made by the witnesses with a view to enable another person to judge of the age of the injury. It is scarcely credible that the libelant should have been able to palm himself off as an able seaman, even if he had sought to do so, and to obtain a month's advance of wages, if this dislocation was an old injury, and his left arm was dangling from the shoulder, mainly helpless or kept at his breast, and subject to pain if not held in a precise position. It is equally improbable that a person in that condition should attempt to mount a ladder with a large bag on his shoulder. Witnesses in his behalf testify, as he does himself, that prior to this fall he was able-bodied, and his arm sound. The master and the steward testify that they examined his shoulder a few hours after he came on board, and from the tenor of their testimony it is plain that the master regarded the shoulder when he examined it, whatever the date was, as dislocated. He made no attempt, however, to set the arm himself, and he denies that the libelant asked to be put ashore. If he examined the arm within a few hours of the fall, and believed the dislocation was an old wound, and not the result of the libelant's fall, it is strange that no resentment should have been expressed at the libelant's palming himself off as an able seaman; and, if not at once sent ashore, that he was

not at least disrated in the log from the wages of an able seaman, for his palpable fraud and incapacity.

In view of all the circumstances, I must sustain the libelant's version of the case, and hold that it was the duty of the master when fully notified of this injury, as he was, to afford the libelant such reasonable treatment for the resetting of the limb as circumstances afforded. There was abundant opportunity for this, both at Flushing and at the Downs. The obligation of the master in this respect was an obligation wholly independent of their relation as fellow-servants in navigating the ship. It was the ordinary maritime obligation to provide for the seaman's cure of hurts while in the service of the ship. *The City of Alexandria,* 17 Fed. Rep. 390, 395, and cases there cited; *The Chandos,* 4 Fed. Rep. 645; *The City of Carlisle,* 39 Fed. Rep. 807, 816; *Scarff* v. *Metcalf,* 107 N. Y. 211, 216, 13 N. E. Rep. 796; *The Vigilant,* 30 Fed. Rep. 288. The neglect of this duty was negligence for which the ship is liable.

In consequence of the neglect and the delay in proper treatment, the libelant has not only suffered great pain, and will be unable to do much of any work for at least six or eight months; but his arm will never recover its full strength, nor be able to be raised above a horizontal line from the shoulder. Notwithstanding the roughness of the master at first, and his great mistake in the treatment of the libelant in respect to his arm, the case affords such other evidence of the master's inherent kindness and consideration for the defendant, as respects other misfortunes of the libelant during the voyage, that no punitive damages should be given, but only such as may fairly compensate the libelant for his actual loss through the delay in proper treatment. I allow him $1,250, and costs.