## PRINCE v. TEXAS & N. O. R. CO.

### No. 5796.

Court of Appeal of Louisiana,
Second Circuit.

March 31, 1939.

Rehearing Denied April 28, 1939.

Wise, Randolph, Rendall & Fryer, of Shreveport, for appellant.

Cawthorn, Golsan & Tooke, of Mansfield, for appellee.

DREW, Judge.

Odis Prince instituted this suit for damages against the Texas & New Orleans Railroad Company for personal injuries alleged to have been caused by a motor propelled train operated by defendant through the town of Logansport, Louisiana. The train consisted of the motor car and one coach. The amount sued for is $25,000.

There are three tracks, all south of defendant's depot at Logansport. The main line track is the center one. To the north of the main line and between it and the depot is a side track, the north rail of which is 8 feet south of the depot. There is another side track south of the main one. The space between the north rail of the north side track and the depot was and had been used for many years by pedestrians as a pathway to the depot. This track was well known to the railroad company's officials and employees.

On the day of the alleged accident, plaintiff had been to the post office and from there was approaching the track with the intention of mailing a letter on the train he knew to be about due, also to purchase a ticket and board the train to the town or village of Funston. He arrived at the track near the west end of the station and proceeded east down the pathway between the depot and the north track in the direction of the ticket office. The motor train was approaching the station from the west, therefore, plaintiff's back was necessarily toward the oncoming train. At that time, a freight train operated by defendant company was occupying the main line, which caused the motor train to take the side track next to the station. It entered this side track at a switch several hundred feet west of the station. Whether or not it stopped at the switch is not shown. However, it proceeded to a point opposite the depot at a very slow rate of speed estimated by all at approximately 3 to 4 miles per hour. The testimony shows that the train just drifted down to the station and was making very little noise. A short distance before the train stopped at the station is where plaintiff alleged it struck him and caused the damages sued for here.

Plaintiff alleged the following acts of negligence on the part of defendant company:

"1. That respondent, its agents, servants and employees failed to keep a proper lookout and to observe the position of petitioner on the side of the track from the time to stop the train and avoid the collision;

"2. Defendant, its agents, servants and employees, if they did observe petitioner's position, failed to exercise due care and to take the proper steps in slackening the speed of the train or in stopping it in order to avoid the collision;

"3. Defendant, its agents, servants and employees were negligent in allowing the public and its patrons to use its tracks as a pathway to and from its depot at Logansport, Louisiana, without taking proper precaution to protect them from its trains operating on said tracks;

"4. Defendant, its agents, servants and employees were negligent in failing to keep a proper lookout and to notify and warn petitioner of the approach of its train on the side track or the north siding; and

"5. Defendant, its agents, servants and employees were negligent in running their train off of the main track onto a siding open and exposed to the public and its patrons and customers without warning any such parties of its said switching."

Plaintiff alleged the train struck him on his right side, hitting the shoulder, back, hip, arm and leg; that the blow caused a great many contusions and bruises on that part of his body and as a result, his back, spine, ribs, muscles, tissues, ligaments, tendons and cartilages have been seriously affected and impaired and have caused him grave physical and mental disorder which is of a permanent nature; that immediately after said injury and even at the time of the filing of this suit, more than seven months thereafter, the aforesaid portions and members of his body became and are dislocated, torn, abrased; and that said portions, as the result of said blow, became sprained,

strained, stretched, shocked, and so affected as to be accompanied by intense pain which, instead of getting better, are gradually and progressively growing worse; that the pain and injuries have caused him to become highly nervous and restless; that he is and will remain a physical wreck for the remainder of his life; that at the time of the accident, he was 29 years of age, married, and the father of five children; that his life expectancy was 37 years.

Plaintiff itemized his damages as follows:

| | |
|---|---|
| Permanent loss of earning capacity | $15,000.00 |
| Physical pain, suffering and mental anguish | 7,500.00 |
| Medical and hospital bills and traveling expenses to and from doctors and hospitals incurred and to be incurred in the future | 2,500.00 |

In answer to a plea of vagueness ordered answered by the court, plaintiff, by supplemental petition, itemized the last item of damages set out in the original petition, showing the amount incurred to date to be $258.80 and the probable amount he will have to expend in the future to be $2241.20.

In answering, defendant admits the facts set out by us in the beginning of this opinion; admits four different times that plaintiff and its train collided; denied any negligence on its part and that plaintiff received the injuries he alleged. It further answered as follows:

"38. Further answering, defendant avers that the direct and proximate cause of the accident was not any negligence on the part of the defendant, alleged in the petition and hereinabove specially denied, but was the fault, carelessness, and negligence of the plaintiff himself in going, being and walking on and about the tracks of the defendant company; knowing the train of defendant was then due and expected, without stopping, looking or listening to ascertain the approach of said train; in going, being and continuing on said tracks with the knowledge that said train was approaching, without taking proper precautions to observe upon which track it was approaching; in failing to look and listen to ascertain that said train was approaching on the track on which plaintiff was about to enter, or was walking upon; and in failing to observe said train and remove himself from the track as the train approached in order to avoid being struck thereby, and accordingly, such negligence bars plaintiff's recovery herein.

"39. Further answering, in the alternative, should it be held that the defendant was guilty of any negligence alleged in the petition, which is denied, defendant avers that the negligence of plaintiff, hereinabove set forth, contributed to the accident to such an extent that without same said accident would not have occurred, which contributory negligence is specially pleaded in bar of plaintiff's right to recover herein."

The lower court has favored us with a well written opinion in which it awarded plaintiff judgment in the amount of $500 for pain, suffering, injuries and loss of earnings, and $200 for medical expenses, doctors' bills and other expenses incurred and connected with the injury.

Defendant has perfected an appeal to this court. Plaintiff has not answered the appeal.

The lower court found the facts and disposed of the question of negligence in the following manner:

"The court has heard the evidence on the trial and has also read the transcribed note of evidence, and has carefully read the able and well prepared briefs of counsel for plaintiff and defendant. The court does not feel disposed to discuss at length all of the evidence, but will seek to reconcile the conflicting testimony and arrive at the true state of facts in this case.

"While the defendant in this case has admitted in the pleadings that plaintiff and its train collided, defendant introduced evidence of two witnesses that the plaintiff was not struck by the train; which, of course, was inconsistent with the admissions of the defendant's pleadings in this case.

"The court is well satisfied that the plaintiff in this case was, to say the least, an implied invitee and entitled to all the privileges enjoyed as such under the law. He proved conclusively by the postmistress that he purchased a money order just prior to the time that he went over to the depot, and stated that he was going to mail it on the train; he proved by a disinterested witness, who was at the depot and who asked him where he was going,

that he stated at that time he was going to Funston, Louisiana, and the agent of the defendant admitted that he did purchase a ticket to Funston, but that the agent would not sell him one as he had a five-dollar-bill, the train was about to leave and he could not make the change at the time.

"This leaves the only questions to be determined by the court the following:

"Was the plaintiff guilty of negligence?

"If so, was the plaintiff guilty of contributory negligence?

"If the plaintiff is entitled to recover, what is the quantum of damages that he should recover?

"There is no question in the court's mind that plaintiff was struck by a train belonging to the defendant. He testified to that fact. Another witness testified to that fact and Mr. Lafitte, a disinterested witness, said he saw him 'fall away from the train', but did not see him struck. In addition, plaintiff informed the depot agent immediately thereafter that he had been struck by the train, and he was treated the next day by the company's doctor for injuries to his shoulder, which were fresh. Defendant admits in its answer that he 'collided' with its train, but on the trial of the case, without any objection, it introduced the evidence of two witnesses who said he was not struck. However, the evidence and admissions of the defendant are conclusive to this court that he was struck.

"It appears from the evidence that there was a freight train using the main line; that it had been switching, but was only idling while standing still at the time of the accident. That plaintiff went to the depot with the intention of mailing the letter on the train, and buying a ticket to Funston. That he was walking eastward between the house-track, and that the train of the defendant was coming from the west traveling east toward Shreveport, Louisiana. That due to the fact that the freight train was using the main line, the passenger train had to come off the main line onto the house-track or north siding, which it sometimes had done before, but which was not the customary track that it used. That it came into the station at the rate of three or four miles per hour. That the plaintiff was walking with his back to the train and that it struck him on the shoulder and right side of his back. These facts were so completely proven that

the court does not think there can be any doubt about them.

"The engineer testified that the bell on the locomotive was ringing and was corroborated in part by other witnesses, and there were witnesses who testified that it was not. The engineer testified further that he was keeping a proper lookout, and could see the track in front of him, but did not see the plaintiff. The court does not know why he did not see plaintiff, as there were others who saw him and whistled and cried warnings to him to get out of the way. Even some of defendant's witnesses testified to this fact. The engineer further testified that he could stop his train in about six feet, at the rate he was traveling.

"The evidence is further undisputed that the pathway being used at the time by plaintiff was commonly used by the public at Logansport in going to, from and about the depot. It was a narrow pathway.

"Without any further review of the testimony along this line, the evidence thoroughly convinces us that plaintiff was using the customary pathway; that the train came onto the house-track at a slow rate of speed and, being an electric train with only one coach, made very little noise; that the freight train that was on the main line, even though idling, was perhaps making enough noise to prevent plaintiff from hearing it and that he did not hear it; that if the engineer could have stopped his train within six feet, as he testified he could, he should have stopped it to prevent striking plaintiff, if he saw him, and if he did not see him, he should have, as other witnesses, both for plaintiff and defendant, did see him, and there was nothing to obstruct his vision, according to his own testimony; that this was negligence on the part of defendant company and that the plaintiff was using the pathway commonly used by the public, and that the engineer, in coming off the main line and closer to the depot, platform and passageway, should have used even greater caution than if he had been on the main line.

"It is true that under the law, the railway companies have certain rights as to the roadbeds used by them, but they cannot utterly disregard the rights of those who may be thereon and endanger them, if it can be avoided.

"The court finds that there was no contributory negligence on the part of plain-

tiff, and this brings up for consideration the amount or quantum of damages which the plaintiff should recover."

A careful study of the record convinces us that the lower court was correct in its finding of fact relative to the negligence of defendant company. The record abundantly shows that defendant was guilty of negligence which was the proximate cause of the accident and injury to plaintiff.

■ We cannot agree, however, with the lower court in its finding that plaintiff was not guilty of any negligence. It is true he was an implied invitee and was not negligent in using the passageway between the track and the depot, but he was negligent in using it in the manner in which he did.

■ The distance between the north rail of the track, which is the nearest rail to the station, and the depot, is 8 feet and a few inches, providing sufficient space for him to have walked without being close enough to the track to be struck by the train. When using this passageway, plaintiff walked so close to the track that the train struck him. There is no testimony to show the necessity of his walking close to the track when he had 8 feet of space in which to walk. If he had used the center of this space, the train could not have come in contact with him without first leaving the track. In walking in the space as he did, knowing the train was about due and that the main line was blocked by the freight train which was in plain view, he was negligent and his negligence continued down to the very moment of the collision. However, under the humane doctrine of last clear chance, he is clearly entitled to recover against the defendant company for the injuries he received.

From the depot several hundred feet west, the track is perfectly straight. The engineer was seated in the front end of the motor car, which end was enclosed with glass and, as testified to by him, there was nothing to obstruct his view to the front or on either side of the track. The car was moving only 3 or 4 miles per hour and could have been stopped within a distance of 6 feet. Plaintiff did not know the train was overtaking him; in fact, he did not know it was coming into the station, his back being toward it. He was entirely oblivious of its near approach. The train was equipped with a whistle, but it was not sounded. The bell, if it was ringing, was not heard by plaintiff. That plaintiff was oblivious to the situation should have been apparent to the engineer and it was his duty to sound a louder warning, if any was sounded, and if necessary, to have stopped this slow moving train to avoid striking plaintiff. If the engineer did not realize that plaintiff was unaware of the train's approach when he first saw him, he certainly should have been when within 10 or 15 feet of plaintiff. Even then, according to the engineer's testimony, he could have stopped the train and avoided colliding with plaintiff. His excuse for not doing so is that he did not see plaintiff at any time. His testimony on this point is improbable, and all we can say is that if he did not see him, he must have been asleep at the throttle. Whether he saw plaintiff or not, however, makes little difference for, in the eyes of the law, he did see him and the defendant is responsible for his failure to exercise the last clear chance to avoid injury to plaintiff. Loewenberg v. Fidelity Union Casualty Company, La.App., 147 So. 81; Harlow v. Owners' Auto Insurance Company, La.App., 160 So. 169; Iglesias v. Campbell, La.App., 175 So. 145; Jackson v. Cook, 189 La. 860, 181 So. 195.

■ Plaintiff's suit was not filed in forma pauperis. After judgment was rendered below in vacation, the lower judge entered orders of appeal for both the plaintiff and defendant. Defendant perfected its appeal. Plaintiff did not and has not answered the appeal. Therefore, we are without right to increase the award, if we thought it should be.

The lower court has thoroughly discussed the testimony relative to injury, as follows:

"The testimony along this line has been very carefully considered, and the court does not think or believe from the testimony or the observation of the plaintiff that he was as seriously injured as claimed.

"On behalf of the plaintiff, we have the testimony of Dr. A. S. Cooper, who did not examine plaintiff until about a week before the trial, which was something like fifteen months after the accident. Also the testimony of Dr. William C. Windham, of Center, Texas, who treated plaintiff from April, 1937, to August, 1937. These doctors either did not have the facilities or did not use those they might have had to give the plaintiff as thorough an examination as would aid the court to

determine exactly the full extent of the injuries or disabilities which the plaintiff claims to have had.

"The defendant introduced the testimony of Dr. V. L. Sandifer, who treated plaintiff the next day after the injury; the testimony of Dr. W. A. Ramsey, who treated him soon thereafter, and the testimony of Dr. C. G. Garrett, who made a very thorough and complete examination about a year after the accident, and the testimony of these doctors convinces the court that the plaintiff was not very seriously injured.

"It was amusingly strange that the plaintiff sought to introduce evidence as to impotency as a result of the accident, which was objected to and the objection sustained. This case was tried fifteen months after the accident, and the plaintiff testified that he had a child five months of age. If there was any merit in this contention, there must have been an outside influence that crept into the marital relationship between him and his wife; a disturbing factor to the connubial felicity or conjugal bliss formerly enjoyed or normally to be expected. Both the plaintiff and his wife are of the ebony hue of the sun-kissed Ethiopian race. We are taught from the Scriptures that this race does not possess the supernatural power to change its skin; and neither does the court believe that it is possessed of the supernatural power to conceive and give birth to a child from an impotent spouse; therefore, the child being born some ten months after the accident, the court can only conclude that plaintiff might not have been so seriously injured or impaired as to his potency or physical well-being; and as to any other complications there might otherwise enter, the court does not care to discuss.

"The evidence of Dr. Garrett, being based on complete physical examination by x-ray and other facilities, seems to be the only evidence that was complete in every detail. He was positive in his testimony that the plaintiff had completely recovered from any injury sustained; and that there was not and had not been any broken bones.

"The testimony of Dr. V. L. Sandifer, who treated the plaintiff the next day, was to the effect that the only evidence of injury was a superficial wound on the shoulder. The testimony of Dr. Ramsey, defendant's witness, was to the effect that when he treated the plaintiff sometime shortly after the accident, and the plaintiff was complaining of his back hurting him, that he found a swelling above the right kidney.

"Mr. Price, the depot agent testified that plaintiff's clothes were not torn immediately after the accident. If the plaintiff had been struck with a sharp part of the engine, he would have had torn clothing and worse wound than that found by Dr. Sandifer. The court is of the opinion that if he had been struck by the flat part of the engine, if the blow had been very severe, it would have broken some bones on the right side of the body, and it would have thrown him to the ground. He testified, and all other witnesses testified, that it did not cause him to fall when struck, but only knocked him to one side of the track.

"The court is of the opinion that the accident only caused him injuries, pain and suffering for a short duration, and that the injuries were to the tissues and muscles of the right side of his body, which healed, or should have healed, in a short while. The evidence in the record is to the effect that perhaps plaintiff was suffering with infected tonsils or bad teeth, and it might be that this was the reason that plaintiff was being treated otherwise.

"The court is of the opinion that $500.00 would be adequate compensation for plaintiff for injuries, pain and suffering and loss of earnings, and that he should have judgment for the additional amount of $200.00, for medical expenses, examinations and other expenses in connection with the injury."

We are convinced the award is not excessive.

It therefore follows that the judgment of the lower court is affirmed, with costs.