governed by the 1936 statute,[1] the provisions of which are the same as the similarly numbered sections of the Revenue Act of 1934. It appears that there was a small amount of cash on hand in the holding company which was turned over to the operating company. .

The slight differences of fact do not affect the result which is controlled by our decision in Commissioner of Internal Revenue v. Estate of Anna V. Gilmore et al.

The decisions of the Board of Tax Appeals are affirmed.

---

COMMISSIONER OF INTERNAL REVE-
NUE v. Bertha F. KANN and five
other cases.

Nos. 7949, 7950, 7951, 7952, 7953, 7954.

Circuit Court of Appeals, Third Circuit.

Argued May 7, 1942.

Decided Aug. 28, 1942.

Samuel H. Levy, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Bernard Chertcoff, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

A. Leo Weil, Jr., of Pittsburgh, Pa. (Weil, Christy & Weil, of Pittsburgh, Pa., on the brief), for respondents.

Before BIGGS, MARIS, and GOOD-RICH, Circuit Judges.

GOODRICH, Circuit Judge.

The questions here involved are substantially the same as those discussed in the opinion of Commissioner of Internal Revenue v. Estate of Anna V. Gilmore et al., 3 Cir., 130 F.2d 791, decided this day. The differences in facts are slight. Here the holding company was a Delaware corporation and the operating company a Pennsylvania corporation. The merger took place under the statutes of Pennsylvania and upon the filing of the agreement of merger with the Secretary of the State of Delaware, the charter of the holding company was cancelled. The transaction here is

JONES v. WATERMAN S. S. CORPO-
RATION.

No. 8011.

Circuit Court of Appeals, Third Circuit.

Argued July 15, 1942.

Decided Sept. 21, 1942.

---

798

Abraham E. Freedman, of Philadelphia, Pa. (Freedman & Goldstein, of Philadelphia, Pa., on the brief), for appellant.

Thomas F. Mount, of Philadelphia, Pa. (Rawle & Henderson and Joseph W. Henderson, both of Philadelphia, Pa., on the brief), for appellee.

Before JONES and GOODRICH, Circuit Judges, and LEAHY, District Judge.

GOODRICH, Circuit Judge.

This case is before the court upon an appeal from a dismissal of the plaintiff's complaint by the court below on the ground that the plaintiff's allegations did not state a claim upon which relief could be granted. The action is one brought by a seaman to recover the cost of maintenance, cure and wages. According to his allegations the plaintiff signed on under coastwise articles from New Orleans, La., to East Coast and Gulf Ports of the United States for a period of twelve months. While the vessel was moored to Pier C, Port Richmond, Philadelphia, January 16, 1941, plaintiff left on shore leave. As he was proceeding through the pier toward the street all the lights on the pier went out. In the ensuing darkness the plaintiff

alleges that he fell into an open ditch at a railroad siding and sustained injury.

■ The obligation of the defendant to the plaintiff arising out of the maritime law for maintenance and cure is stated in the leading case of The Osceola, 1903, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760, as follows: "That the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued."

The only point with which we are here concerned is the requirement, in order that the obligation for maintenance and cure apply, that the injury or illness arise in the service of the ship. The amount of the claim is not before us nor is there any question of a claim otherwise recoverable being lost by the "wilful misconduct" of the seaman. Decisions involving the latter point are useful only in so far as they assist in defining the right.[1]

The plaintiff's point is that he was continuously in the service of the ship and subject to orders even while on shore leave since he was at all times subject to the call of duty. Defendant says that the plaintiff's liability to orders was theoretical while on shore leave and this was the view taken by the District Judge who said that whatever the general obligation of the seaman might be "he is actually beyond the power and authority of the ship's officers" while on leave.

The nature of the obligation for maintenance and cure has been elaborated at length by judges learned in maritime law.[2] This learning will not be repeated here. It is sufficient to say that the right arises out of the relationship by virtue of the peculiar nature of maritime employment. It has been stated in broad language as applicable whenever the injured person was, "when incapacitated, subject to the call of duty as a seaman, and earning wages as such."[3]

■■ As an authority against the right of the plaintiff to recover in this case the

[1] The Berwindglen, 1 Cir., 1937, 88 F. 2d 125; Barlow v. Pan Atlantic S. S. Corporation, 2 Cir., 1939, 101 F.2d 697; Oliver v. Calmar S. S. Co., D.C.E.D.Pa. 1940, 33 F.Supp. 356.

[2] See the discussion in the Osceola case, supra; Harden v. Gordon, C.C.Me.1823, 11 Fed.Cas. p. 480, No. 6,047; Reed v. Canfield, C.C.Mass.1832, 20 Fed.Cas. p. 426, No. 11,641; The Bouker No. 2, 2 Cir., 1917, 241 F. 831, certiorari denied, 1917, 245 U.S. 647, 38 S.Ct. 9, 62 L.Ed. 529.

[3] The Bouker No. 2, supra, 241 F. at page 833, cited with apparent approval in Calmar S. S. Corp. v. Taylor, 1938, 303 U.S. 525, 529, 58 S.Ct. 651, 82 L.Ed. 993.

defendant relies strongly upon a decision of the Circuit Court of Appeals for the Ninth Circuit. Meyer v. Dollar S. S. Line, 1931, 49 F.2d 1002. In that case a seaman received an injury while scuffling on the after-port deck with his shipmates. The injured man was off watch at the time. Recovery of wages to the end of the voyage was denied. The court stated that the injured man was at the time in the service of the ship since he was subject to the call of duty even though off watch, but considered that when he commenced scuffling for his own amusement the situation was changed. The court found an analogy by reference to "line of duty" from "Naval Courts and Boards"[4] and the opinion of the Attorney General construing the phrase "in line of duty" as used in the War Risk Insurance Act (40 Stat. 611, § 300). The portion of the opinion of the Attorney General quoted discusses "line of duty" for a soldier. If a reference to land employment is relevant one might also look to the judicial construction of phrases like "arising out of and in the course of employment" and other problems in the application of Employers' Liability and Workmen's Compensation Acts. Be that as it may, we are not here called upon either to agree or disagree with the approach of the court to the problem in the Meyer case nor the several District Court cases which have relied upon and extended it. In spite of provisions that the rule regarding maintenance and cure is a beneficent one to be applied liberally for the benefit of the seaman, we see in them a distinct tendency to limit the scope of its operation to a much narrower situation than that involved in the concept of employment in the cases of workmen injured in non-maritime occupations.[5] We may treat the Meyer case as an application of the accepted doctrine that the seaman cannot recover for wilful acts on his own part. And we do not need to decide here and, therefore, leave open for decision when the case arises, what might be the legal liability if this plaintiff, having left the pier safely, had been hit by a truck on the public streets of Philadelphia,[6] nor his rights if he sprained his ankle playing baseball on shore.[7] This case involves only the question of the seaman's rights with regard to injury suffered in the area immediately adjacent to his place of work through which he, of necessity, had to pass in going or coming. This liability for maintenance and cure has been, we think, directly adjudicated in former decisions. With respect to this there is no reason, as Justice Story said six score years ago, "to desert the steady light of maritime jurisprudence for the more doubtful guide of general reasoning." Harden v. Gordon, supra. Liability for maintenance and cure for injuries sustained through exposure in returning to the ship was imposed by Justice Story in Reed v. Canfield, supra, where the shore expedition was purely social on the part of those participating in it and where, as a matter of fact, the crew overstayed its leave. While it is true that officers of the ship were along, the seaman was a member of the party because he volunteered for the occasion. A seaman coming on board to join the ship's crew was allowed recovery for injuries sustained when he fell off a ladder.[8] And a man injured while walking over property at which his vessel was berthed to go aboard and take up his watch was likewise held to be in the service of the ship.[9] These cases are all instances of a seaman injured while going to work. But the same rule has been applied in the Fourth Circuit, The Michael Tracy,[10] where the seaman, having been paid and discharged at the end of the voyage fell off a ladder when leav-

---

[4] Note, however, that the definition quoted is "A person in the active service and submitting to its rules and regulations is, in general, in the line of duty." One may ask whether a seaman on shore leave, away from his ship, but with definite limitations on his time of absence, is not submitting to rules and regulations. Cf. the language of the Court in Southern Steamship Co. v. National Labor Relations Board, 1942, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. —.

[5] See The President Coolidge, D.C.N.D. Wash., 1938, 23 F.Supp. 575, where recovery was denied when the seaman was injured while responding to a telephone call from his wife.

[6] Cf. Smith v. American South African Line, Inc., D.C.S.D.N.Y.1941, 37 F.Supp. 262.

[7] Cf. Collins v. Dollar S. S. Lines, Inc., Ltd., D.C.S.D.N.Y.1938, 23 F.Supp. 395.

[8] The Scotland, D.C.S.D.N.Y.1890, 42 F. 925.

[9] Hogan v. S. S. J. M. Danziger, D.C. S.D.N.Y.1937, 1938 Am.Mar.Cas. 685. But see contra, Lilly v. United States Lines Co., D.C.S.D.N.Y.1941, 42 F.Supp. 214.

[10] 1924, 295 F. 680.

ing the ship. "The service of the ship is by no means limited to acts done for the benefit of the ship, or in the actual performance of seaman's duty on board" said the court in Ringgold v. Crocker D.C.S.D. N.Y.1848, 20 Fed.Cas. p. 813, No. 11,843. Just how much further it goes we need not, in this instance, commit ourselves. It certainly goes far enough to include injuries sustained in the immediate neighborhood while going upon or leaving the ship on which the man is employed.

The judgment of the District Court is reversed and the case remanded for further proceedings not inconsistent with this opinion.