**Isaac MYLES, Libelant,**

v.

**QUINN MENHADEN FISHERIES, INC., Respondent.**

**No. 4068.**

United States District Court
E. D. Louisiana,
New Orleans Division.

April 20, 1961.

**198**

Brumfield & Organ, Donald V. Organ, Gene S. Palmisano, New Orleans, La., for libelant.

Phelps, Dunbar, Marks, Claverie & Sims, George W. Healy, III, W. Eugene Davis, New Orleans, La., for respondent.

Dufour, St. Paul, Levy & Marx, Leonard B. Levy, New Orleans, La., for New Orleans and Lower Coast R. R. Co., respondent-impleaded.

Normann & Normann, David R. Normann, New Orleans, La., for Zurich Ins. Co., respondent-impleaded.

J. SKELLY WRIGHT, District Judge.

Isaac Myles, an itinerant Menhaden fisherman, suffered the amputation of his two legs below the knees while asleep on a spur track of the New Orleans and Lower Coast Railroad Company serving the plant of the respondent, Quinn Menhaden Fisheries, Inc., near Triumph, Louisiana. Before falling asleep on the track,[1] Myles apparently had been walking back to the bunkhouse on the property of the respondent or to his fishing vessel, the Benson Riggin, which was docked adjacent thereto. Libelant sued his employer,[2] Quinn Menhaden, under the Jones Act[3] and the general maritime law. Quinn Menhaden, relying on Ryan and Weyerhaeuser,[4] impleaded the railroad under Rule 56, 28 U.S.C.A.

Myles, through his counsel, maintains that the railroad track approach to the bunkhouse where he sometimes slept while his fishing vessel was docked at the Menhaden wharf, which approach, incidentally, also led to the wharf, was unsafe in that it was unlighted and that it was customary for the railroad to use the spur track at night by backing trains with a minimum of light. Myles admits that another approach to the bunkhouse, and to the wharf, in the form of a shell road through the Menhaden premises was available to him. He maintains, however, that it was customary and convenient for seamen on the Menhaden

---

1. Myles testified that he was not asleep on the track, that he was walking in the middle of the track and was unable to hear the approaching train because of partial deafness. This testimony, however, is incredible in view of the fact that the brakeman on the leading end of the backing train testified that he saw Myles lying alongside the track asleep as the train approached. The evidence further shows that before switching into the spur track, some 100 feet from the accident, the train blew its whistle and started the continuous ringing of its bell. Under the circumstances, it is inconceivable that Myles would not have seen and heard the train before he was struck if he were awake. Moreover, Myles' hearing in the courtroom did not appear to be particularly impaired.

2. Libelant originally sued Quinn Menhaden Fisheries, Inc. Later, because of the interlocking corporate setup, Quinn Menhaden Fisheries of Louisiana, Inc., and Bell River Marine Ways, Inc., were joined as additional respondents and possible employers of Myles. The facts show that Quinn Menhaden Fisheries of Louisiana, Inc. was his employer and operator of the Benson Riggin.

3. 46 U.S.C.A. § 688.

4. Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491.

boats to use the spur track as a walkway and that the use thereof by the seamen was well known to his employer. He suggests that his employer also knew that seamen sometimes drank to excess while off duty and that an unlighted spur track was a particularly dangerous walkway for the inebriate.[5] Myles has made a settlement of his claim against the railroad for $25,000. He maintains, however, that this amount does not cover the damages he has suffered and that his employer should be required to pay the balance.

Respondent Quinn Menhaden, employer of Myles, asserts first that there can be no possible claim based on unseaworthiness of the vessel because Myles at the time of his injury was several hundred feet therefrom on the railroad track. Respondent maintains further, with reference to the claim under the Jones Act, that its premises were not dangerous for seamen returning to the bunkhouse or to the fishing vessels, that the private shell road to the property was a safe means of ingress and egress which should have been used rather than the railroad track. Respondent makes a further point that the location of the accident is really not on its premises, but on the premises of an adjoining landowner who has leased to the railroad.

■ It will be unnecessary to consider the various legal and factual defenses offered by respondent because the proximate cause of this accident was the failure of the railroad to learn of the presence of Myles on the track in time to avoid maiming him. The evidence clearly shows that the railroad knew the conditions, particularly with reference to the absence of lights, which obtained along the spur track approach to the Menhaden plant. The railroad was also aware of the fact that seamen customarily used this track as an approach to the bunkhouse and to the wharf. Nevertheless, it was the practice of the railroad, and it was conforming to this practice on the night of the injury, to back unlighted trains[6] onto the spur track and into the darkness where men reasonably might be expected to be walking. It is true, of course, that a person so walking, in command of all of his faculties, would become aware of the approach of the train in time to protect himself. Here we have the classic case of the drunk on the track, unaware of his danger and unable to protect himself therefrom. Under such circumstances, there arises the obligation on the part of the railroad to use reasonable care to discover his peril and to avoid the accident.[7] Thus, in the circumstances of this case, the railroad had the last clear chance to avoid the accident and it was its responsibility so to do.[8]

■ Since the proximate cause of this accident was the negligence of the railroad, any negligence on the part of respondent by reason of its failure to provide its employee with a safe means of ingress and egress to the bunkhouse or to the vessel would be irrelevant to the issue of liability. Such negligence, at most, created a condition which was not, in law, a contributing cause of the accident.

5. The facts here show that Myles had spent an evening on the town, drinking heavily, before attempting to return to his bunkhouse or his vessel.

6. There was a brakeman on the backing end of the train with a switching lantern. This lantern, with a beam of 12 feet, disclosed the presence of Myles on the track too late to avoiding striking him.

7. Jackson v. Cook, 189 La. 860, 181 So. 195; McGuire v. Vicksburg, S. & P. R. Co., 46 La.Ann. 1543, 16 So. 457; Brown v. Chicago, R. I. & P. Ry. Co., La.App., 14 So.2d 307; Williams v. Missouri Pac.

R. Co., La.App., 11 So.2d 658; Young v. Thompson, La.App., 189 So. 487; Prince v. Texas & N. O. R. Co., La.App., 189 So. 291; Shipp v. St. Louis Southwestern Ry. Co., La.App., 188 So. 526; Edwards v. Texas & P. Ry. Co., La.App., 185 So. 111, rehearing refused La.App., 186 So. 367.

8. This case is to be distinguished from track trespasser cases. Compare Rutherford v. Illinois Central Railroad Company, 5 Cir., 276 F.2d 330. Here Myles was where he had a right to be and where he might be expected to be.

■ The claim for maintenance is also without merit. As far as this record shows, Myles attained maximum cure[9] when he left the Marine Hospital fitted with artificial limbs.

Decree for respondent.

---

9. Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850.