**Isaac MYLES, Appellant,**

v.

**QUINN MENHADEN FISHERIES, INC.,**
Appellee.

**No. 19256.**

United States Court of Appeals
Fifth Circuit.

April 25, 1962.

Donald V. Organ, New Orleans, La., for appellant.

David R. Normann, Leonard B. Levy, W. Eugene Davis, New Orleans, La., for appellee.

Before JONES, BROWN and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This appeal from an adverse decree of the District Court sitting in admiralty raises the principal question whether the Court made adequate findings as required under Admiralty Rule 46½, 28 U.S.C.A. A peripheral question on maintenance and cure is also presented.

■ Myles, a member of the crew of a small Menhaden fishing vessel, sustained severe injuries when his legs were traumatically amputated by the wheels of a passing freight train. The brief on his behalf cannot resist the natural temptation to reargue the facts from a point of view favorable to him, although now adversely determined by the trial Judge. But both as a sheer matter of the clearly erroneous concept of F.R.Civ.P. rule 52(a), 28 U.S.C.A. imported into admiralty cases, O/Y Finlayson-Forssa A/B v. Pan Atlantic S.S. Corp., 5 Cir., 1958, 259 F.2d 11, 13, 1958 A.M.C. 2070, and more so, as a matter of specific claims of error, the appellant does not, nor can he, successfully attack the findings of fact. Thus the factual setting which we must consider is that set forth in the detailed and careful opinion of the District Court. Myles v. Quinn Menhaden Fisheries, Inc., E.D.La.1961, 194 F.Supp. 197, 1961 A.M.C. 2688.

That means that we treat this criticism concerning the failure to make findings against this background. Myles, after several hours "on the town" drinking wine and beer at a nearby hangout, was returning about midnight to his ship. Instead of using a shelled access road running from the concrete highway into the Menhaden plant and thence to the wharf, he chose to walk down the railroad switching side track. Instead of continuing to walk down the track, he laid down beside the track at a point approximately 100 feet from the intersecting highway. A string of cars was being backed into the plant with no light on the rear end of the caboose, the leading car. With the illumination from the hand lantern, the brakeman saw Myles' position when the train was about 12 feet away, and too little time and distance remained

to stop its forward movement. In other words, Myles was lying down on or next to the track and had been doing so for some appreciable time. The Judge rejected as simply "incredible" (see note 1, 194 F.Supp. 197, 198) Myles' claim that while walking down the track he stumbled and fell across it as he sought to get out of the way when he realized suddenly that the train was upon him.

The proof showed that persons, including crew members of fishing vessels, frequently used the pathway alongside the tracks as a means of going to and from the wharf. This use was during both day and nighttime hours. Such persons on occasions were known to have been drinking and in various stages of intoxication. The right of way, with empty beer cans, wine and liquor bottles strewn along the nearby right of way, bore evidence of these habits. There was no lighting of the track or right of way, though the railroad and the Menhaden plant personnel acknowledged that cars were moved in and out, frequently at nighttime. It was undisputed, and the Court found, that railroad cars with no rear-end searchlight were moved on the unlighted track during times that persons might be walking on or along the track.

Acquiescing in the unfavorable finding that this was "the classic case of the drunk on the track," 194 F.Supp. 197, 199, and asserting the uncontradicted facts briefly summarized concerning knowledge of the practice and its hazards, Myles contends that the trial Court could not restrict findings to the railroad's negligence, but that it had to express them as to the negligence of the shipowner as well.

■ The District Court, on the other hand, thought it adequate to deal in those ultimate issues which would be of decisive controlling significance on the decree to be entered. Thus the Court stated that it was " * * * unnecessary to consider the various legal and factual defenses offered by [the shipowner] because the proximate cause of this accident was the failure of the railroad to learn of the presence of Myles on the

track in time to avoid maiming him." [1] 194 F.Supp. 197, 199. This rested on the unique Louisiana doctrine of discovered peril or last clear chance which holds one liable where in ordinary prudence the peril of the other should have been discovered though in fact it never was.[2]

The Court reiterated this approach from the point of view of ultimate decisive controlling issues. "Since the proximate cause of this accident was the negligence of the railroad, any negligence on the part of [the shipowner] by reason of its failure to provide its employee with a safe means of ingress and egress to the bunkhouse or to the vessel would be irrelevant to the issue of liability. Such negligence, at most, created a condition which was not, in law, a contributing cause of the accident." 194 F.Supp. 197, 199.

■ Of course findings of fact and conclusions of law are required. Rule 46½ is positive in its terms, and since so much is necessarily and properly committed to the trial Court, there is really no effective review of the legal correctness of a decision in the absence of such findings. Hence when they are missing, we do not hesitate to remand the case for findings and conclusions quite without regard to the probable intrinsic merits of the case. Victory Towing Co. v. Bordelon, 5 Cir., 1955, 219 F.2d 540, 1955 A.M.C. 553; Employers' Liability Assurance Corp., Ltd. v. Weeden, 5 Cir., 1960, 274 F.2d 809. See also Founders' Insurance Co. v. Rogers, 9 Cir., 1960, 281 F.2d 332, 339, 1961 A.M.C. 330; Morales v. Bull Steamship Co., 1 Cir., 1960, 279 F.2d 299, 303, 1961 A.M.C. 433.

But this case is quite different. This is not one in which the Court has failed to make findings on one or more decisive issues. This is a case in which the Court has expressly stated—hence "found" or "concluded"—that other findings are not

required. The correctness of that action is not to be measured by deficiencies in the form of the recorded findings. It is to be judged, rather, in terms of whether, as a legal proposition, a finding that the railroad's negligence was *the* proximate cause made other findings unnecessary.

■■ It is important to bear this in mind for we would be loathe to say anything which might discourage the writing of formal opinions by trial Judges. Of course, a formal opinion does not of itself satisfy the requirement of Rule 46½, but it may. Whether it does depends on the content of the opinion as a clear-cut determination of those issues of fact and law which are critical to the particular judgment rendered. Where the opinion adequately touches on and disposes of the legally critical issues, it makes certain that it is the Judge speaking from his own travail. It eliminates the shortcomings inherent in the process of adopting verbatim those proposed by counsel and of which we have had much to say recently. See Dreyfus & CIE v. Panama Canal Co., 5 Cir., 1962, 298 F.2d 733, 738, and similar cases decided the same day, The Andros Shipping Co., Ltd. v. Panama Canal Co., 5 Cir., 1962, 298 F.2d 720; Mariblanca Navegacion, S. A. v. Panama Canal Co., 5 Cir., 1962, 298 F.2d 729. Moreover, it is seldom that a complex matter divides itself up into neat compartments of fact and law, and an opinion offers a means by which the Court treats intertwined matters as they really are. A carefully prepared, lucid opinion by the trial Court is of great value to the developing jurisprudence, and more directly of great assistance to the reviewing Court.

■ Analyzing the deliberate purposeful findings which are plainly reflected in the articulate opinion of the lower Court, we think they are quite adequate. Cer-

1. By stipulation of the parties, it was uncontradicted that prior to trial the railroad had settled the companion case for $25,000. The effect of the settlement was that Myles agreed to reimburse the railroad for any amount which it might have to pay the vessel owner in any decree-over under the 56 Admiralty Rule.

2. See the cases collected in footnote 7, 194 F.Supp. 197, 199.

tainly they are in point of form. So are they as to the critical issues required to be covered. Contrary to the suggestion of Myles, the Court was not under any misapprehension as to proximate cause. The precise holding that the railroad's negligence was *the* proximate cause was not a declaration that there can be only one proximate cause for tortious injury. This trial Judge, long experienced in the handling of suits in admiralty and civil actions growing out of injuries to seamen, did not labor under any mistaken view of the law concerning the shipowner's duty to exercise reasonable care in providing safe means of ingress and egress to and from the ship. The record contains numerous pretrial motions and memoranda in which the controlling principles were brought once again to the Court's attention. These included the very recent decision of Braen v. Pfeifer Oil Transportation Co., 1959, 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191, 1960 A.M.C. 2.[3]

 But a claim under the Jones Act, 46 U.S.C.A. § 688, requires a finding both of negligent breach of duty, Vickers v. Tumey, 5 Cir., 1961, 290 F.2d 426, 1961 A.M.C. 1173, and proximate cause. The Court on facts which are not challenged here—and which in any event withstand the clearly erroneous scrutiny —held as a matter of fact, and perhaps as a mixed question of fact and law, that the injuries to Myles were proximately caused solely by the railroad's failure to comply with the Louisiana-imposed duty, and were not, on the other hand, caused by any negligence, assumed or actual, on the part of the shipowner. The Court's findings plainly mean that much. They did not need to be in any different or plainer form. Implicit in the Court's opinion was the recognition that under some conditions injuries of this kind might be deemed to result proximately

from the concurrent negligence of a third party and the shipowner. Whether such a finding would have been supported in this record or sustained by us under the clearly erroneous doctrine, we need not determine. The Court did not make such a finding. Rather, it made a finding that under these circumstances it was all legally due to the acts of the railroad. So long as that stands, findings of negligence against others, whether shipowners or otherwise, would be superfluous. Rule 46½, important as it is, does not compel this.

 Little need be said about the disallowance of maintenance and cure. The Court, applying the correct legal standards which fixed the cutoff date for maintenance at the time Myles achieved probable maximum recovery, see Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850, 1949 A.M.C. 613, held that this coincided with the date he was discharged from the hospital fitted with artificial limbs. This was a factual-legal conclusion based on medical evidence. It was not in any sense an impermissible abdication to the hospital authorities of the Court's duty to decide the controlling questions. In reaching this conclusion, the Court had to weigh the medical opinions given by a general practitioner in Florida in a brief deposition based on two or three office visits. That doctor suggested that Myles perhaps required further treatment to alleviate neurotic consequences from this accident. The Court obviously gave this little weight, and no showing can be made that, as a matter of law, the Court was compelled to accept or translate these elusive, vague opinions into fixed dollars or time.

 Under the peculiar circumstances of this case, the refusal to award Myles the $550 which his counsel paid to the local hospital in settlement of the

---

3. Others urged below or here, or both, include: Buch v. United States, 2 Cir., 1955, 220 F.2d 165, 1955 A.M.C. 713; Paul v. United States, 3 Cir., 1953, 205 F.2d 38, 1953 A.M.C. 1000; Marceau v. Great Lakes Transit Corp., 2 Cir., 1945,

146 F.2d 416, 1945 A.M.C. 223; Jones v. Waterman Steamship Corp., 3 Cir., 1942, 130 F.2d 797, 1942 A.M.C. 1222; Rey v. Colonial Navigation Co., 2 Cir., 1941, 116 F.2d 580.

claim against Myles for charitable treatment rendered does not require a reversal and remand. By stipulation (see note 1, supra), Myles agreed to reimburse the railroad for any amounts which the shipowner would recover over against the railroad. On the findings, approved by us, of sole fault against the railroad, the shipowner, if cast for this $550, would be entitled to recovery over and, in turn, the railroad would then get it back from Myles. Thus, no purpose is to be served by such circuity. Consequently we need not determine whether, as claimed by the shipowner, the receipt of the $25,000 settlement of the damage claim from the railroad extinguished the shipowner's nondelegable contractual responsibility to provide maintenance and cure under the general maritime law.[4]

Affirmed.

4. The shipowner urges: Gomes v. Eastern Gas & Fuel Associates, D.Mass., 1954, 127 F.Supp. 435, 438, 1955 A.M.C. 97; Muise v. Abbott, 1 Cir., 1947, 160 F.2d 590, 1947 A.M.C. 735; Smith v. Lykes Brothers-Ripley Steamship Co., 5 Cir., 1939, 105 F.2d 604, 1939 A.M.C. 1122; United States v. Tug Manzanillo, D.Ore., 1960, 190 F.Supp. 229, 1960 A.M.C. 2423.