EMILIO M. GARZA, Circuit Judge,
dissenting:
Treasure Chest Casino, L.L.C. (“Treasure Chest”) appeals the district court’s order granting class certification under Federal Rule of Civil Procedure 23(b)(3). The majority affirms, finding that the district court did not abuse its discretion in concluding that the plaintiffs’ class satisfies the requirements of Rule 23. I respectfully dissent.
I
Plaintiffs Dennis Mullen, Sheila Bache-min, and Margaret Phipps are crew members of the M/V Treasure Chest Casino (“Casino”), a vessel owned and operated by Treasure Chest in Kenner, Louisiana. They allege that they suffered respiratory illnesses as a result of inadequate ventilation aboard the vessel. According to the district court, the plaintiffs attribute their illnesses to second-hand smoke aboard the Casino. However, the record indicates that the plaintiffs allege other causes as well. In her deposition, Phipps complains of dust on the air vents and germs on the employee radios, and does not attribute her illness to second-hand smoke. Mullen, who does complain of excessive smoke aboard the Casino, also states in his deposition that his illness may have stemmed from the Casino’s temperature being too hot or too cold. Bachemin complains of second-hand smoke, but she testifies about excessive paint fumes as well.
These plaintiffs sued Treasure Chest, on behalf of themselves and persons similarly situated, for negligence under the Jones Act, 46 U.S.C.App. § 688, for operating an unseaworthy vessel, and for failing to provide Maintenance and Cure. They moved to certify a class action under Rule 23(b)(3).[1] The district court certified a class consisting of “all members of the crew of the M/V Treasure Chest Casino who have been stricken with occupational respiratory illness caused by or exacerbated by the defective ventilation system in place aboard the vessel.” Treasure Chest now appeals.
II
Federal Rule of Civil Procedure 23(a) sets forth four prerequisites for all class actions:
(1) numerosity (a class so large that joinder of all members is impracticable); *630 (2) commonality (questions of law or fact common to the class); (3) typicality (named parties’ claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).
Amchem Prods. v. Windsor, 521 U.S. 591, 613, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997) (quotation marks omitted). Once the criteria of Rule 23(a) are met, a party must show that class treatment is appropriate under one of the three categories enumerated in Rule 23(b). See id. at 614, 117 S.Ct. at 2245. Rule 23(b)(3), under which this class was certified, demands “that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.” Fed. R. Crv. P. 23(b)(3). These requirements are commonly referred to as predominance and superiority. See Amehem, 521 U.S. at 615, 117 S.Ct. at 2246. Rule 23(b)(3) applies to cases for which “a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.” Id. (quotations omitted).
The district court concluded that the plaintiffs’ class satisfied Rule 23(a)’s requirements of numerosity, commonality, typicality, and adequacy of representation. It also found that common issues of law and fact predominated over individual issues. The district court identified as common issues (1) whether Casino employees are seamen within the meaning of the Jones Act, (2) whether the Casino is a vessel within the meaning of the Jones Act, (3) whether the Casino was unseawor-thy, and (4) whether the Casino’s ventilation system was unreasonably suited to protect the class members from harm. It classified contributory negligence, damages, and causation as individual issues. Finally, the district court ruled that a class action was superior to other available methods of adjudicating the proposed class members’ claims. In doing , so, the district court relied on the plaintiffs’ proposed trial plan, which provided: “The class action would include an initial phase in which the liability issues common to all plaintiffs would be tried together. Later if plaintiffs prevailed on liability, the unique issues such as damages (and causation if necessary), would be tried in waves of approximately five plaintiffs at a time.” The district court reasoned that “this approach will promote judicial economy and avoid the wasteful, duplicative litigation which would inevitably result if these cases were tried individually.”
Ill
A district court “has wide discretion in deciding whether to certify a proposed class.” Lightbourn v. County of El Paso, 118 F.3d 421, 425 (5th Cir.1997). We may reverse its decision only for abuse of discretion. See id. Treasure Chest contends that the district court abused its discretion in finding that the proposed class satisfied Rule 23. According to Treasure Chest, the plaintiffs’ class lacks numerosity, commonality, typicality, and adequacy of representation, and fails to satisfy Rule 23(b)(3)’s predominance and superiority requirements. The majority examines these six requirements and concludes that the district court did not abuse its discretion. Under the law of our circuit, however, the district court abused its discretion in finding that a class action was “superior to other available methods for the fair and efficient adjudication of the controversy.” Fed. R. Civ. P. 23(b)(3).[2]
A court’s inquiry into superiority “requires an understanding of the relevant *631 claims, defenses, facts, and substantive law presented in the case.” Allison v. Citgo Petroleum Corp., 151 F.3d 402, 419 (5th Cir.1998); see also Fed. R. Civ. P. 23(b)(3) (requiring that in assessing whether class treatment is superior, a court must consider “the difficulties likely to be encountered in the management of a class action”). It is an abuse of discretion to certify a class without adequately considering “how a trial on the alleged causes of action would be tried.” Castano v. American Tobacco Co., 84 F.3d 734, 751 (5th Cir.1996); cf. Kentucky Fried Chicken Corp. v. Diversified Packaging Corp., 552 F.2d 601, 603 (5th Cir.1977) (“The district court’s failure to consider the appropriate factors constitutes an abuse of discretion.”).
The district court certified a class of all Casino employees who were “stricken with occupational respiratory illness caused by or exacerbated by the defective ventilation system.” To prevail, these plaintiffs must prove both negligent breach of duty and proximate cause. See Gavagan v. United States, 955 F.2d 1016, 1019 n. 6 (5th Cir.1992). Under the trial plan, the issue of “whether the ventilation system of the M/V Treasure Chest Casino was unreasonably suited to protect the proposed class members from harm” will be tried as a common issue to a class jury. However, the issue of proximate cause will be tried as an individual issue to individual juries.
In upholding the district court’s bifurcated approach to these two issues, the majority relies on three cases, in which we allowed a district court to try the issue of negligence separately from the issue of proximate cause. See Watson v. Shell Oil Co., 979 F.2d 1014 (5th Cir.1992);[3] Jenkins v. Raymark Industries, Inc., 782 F.2d 468 (5th Cir.1986); Hernandez v. Motor Vessel Skyward, 507 F.2d 1278 (5th Cir.1975) (unpublished). In general, of course, district courts have the authority to bifurcate a trial, trying some issues on a class basis and others individually. See Fed. R. Civ. P. 23(c)(4)(A) (authorizing class treatment with respect to particular issues); Fed. R. Civ. P. 42(b) (authorizing separate trials for separate issues). However, in all of the cases cited by the majority, the class members’ injuries stemmed from a single hazard. In the instant ease, the class members attribute their various ailments to different aspects of the air aboard the Casino. Mullen and Bachemin complain of second-hand smoke, whereas Phipps complains only of dust on air vents and germs on employee radios. Mullen, additionally, points to the Casino’s temperature. Bachemin complains of paint fumes.
The district court abused its discretion by failing to consider the difficulties posed by the plaintiffs’ divers allegations.[4] In a negligence case, a defendant owes a duty “only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous.” Gavagan, 955 F.2d at 1020 (emphasis omitted) (quoting 3 HaRper, James & Gray § 18.2, at 655). In other words, a defendant is liable for negli *632 gence only when the plaintiffs injuries are caused by the same conditions that render the defendant’s conduct negligent. This principle is important to consider, because in this case, different plaintiffs allege different “risks or hazards.” Id. For example, if the class jury finds the ventilation system negligent because of excessive smoke, a plaintiff should not be able to recover for injuries caused by dust or germs. If it finds the ventilation system negligent solely because of high levels of dust or germs, plaintiffs should not be able to recover for injuries caused by smoke, temperature, or paint fumes.
The district court’s trial plan fails to account for the fact that the plaintiffs allege a variety of different “risks or hazards.” There is nothing in the trial plan to ensure that the hazards found by the class jury to constitute negligence are the same hazards based on which the individual juries would determine proximate cause. Put simply, an individual jury might award damages caused by smoke, even though the class jury found Treasure Chest liable only as to excessive dust or germs. This sort of “mix-and-match” verdict simply does not satisfy the elements of negligence, because it would hold Treasure Chest liable for hazards that were never found to constitute a negligent breach of duty. The district court failed to consider the potential for its bifurcated approach to yield such illegitimate verdicts.[5]
Of course, the risk of unjustified verdicts could be avoided if the individual juries determined for themselves whether a given plaintiffs’ injuries were caused by “those risks or hazards whose likelihood made the conduct unreasonably dangerous.” Id. To do so, however, the individual juries would be required to make essentially the same inquiry made by the class jury, that is, whether the hazards posed by the Casino’s ventilation system unreasonably failed to protect the plaintiffs from harm. This overlap between the issues decided by the class jury and the individual juries impacts a court’s superiority inquiry for two reasons. First, it may eviscerate one of the primary rationales for class treatment — judicial efficiency. See Castano, 84 F.3d at 749. Where the class jury and the individual juries must consider similar issues, it is likely that evidence presented at the class trial will be repeated during the individual trials. See id. As we have noted, “[t]he net result may be a waste, not a savings, in judicial resources.” Id.
Second, having separate juries consider essentially the same issue may run afoul of the Seventh Amendment. “[Ijnherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact.” Alabama v. Blue Bird Body Co., 573 F.2d 309, 318 (5th Cir.1978); see U.S. Const. amend. VII (“no fact tried by a jury shall be otherwise reexamined in any Court of the United States”). Therefore, a court may try a certain issue to a different jury only when that issue is “distinct and separable from the others.” Blue Bird Body, 573 F.2d at 318. “Such a rule is dictated for the very practical reason that if separate juries are allowed to pass on issues involving overlapping legal and factual questions the verdicts rendered by each jury could be inconsistent.” Id. When the bifurcation of'class and individual issues risks improper reconsideration of issues assigned to the class-wide jury, appellate courts have not hesitated to decertify the class. See Castano, 84 F.3d at 751; In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1302-03 (7th Cir.1995).
These same concerns — judicial efficiency and the Seventh Amendment — are also implicated by the district court’s plan to handle the issue of comparative negligence. Under the trial plan, comparative negli *633 gence will be considered by the individual juries, whereas the Casino’s negligence will be considered by the class jury. These two issues are too closely related to allow bifurcated treatment. “Comparative negligence, by definition, requires a comparison between the defendant’s and the plaintiffs conduct.” Castano, 84 F.3d at 751; see also Rhone-Poulenc, 51 F.3d at 1303. Therefore, to properly try the issue of comparative negligence, the parties may need to repeat evidence concerning the Casino’s conduct that was already presented to the class jury. See Castano, 84 F.3d at 751. Furthermore, in comparing the negligent conduct of the Casino with the negligent conduct of each plaintiff, the individual juries may “impermissibly reconsider[ ]” the class jury’s determination as to the Casino’s negligence, in violation of the Seventh Amendment. Id.; see also Rhone-Poulenc, 51 F.3d at 1303. Accordingly, “class treatment can hardly be said to be superior to individual adjudication.” Castano, 84 F.3d at 751 (finding that a bifurcated class action failed Rule 23(b)(3)’s superiority requirement where the district court planned to try the issues of negligence and comparative negligence to separate juries).
IV
The district court in this case failed to consider “the difficulties likely to be encountered in the management of a class action.” Fed. R. Crv. P. 23(b)(3). Specifically, it did not address how the disparate hazards alleged by each plaintiff impact whether bifurcated class treatment is feasible. This failure to adequately examine “how a trial on the alleged causes of action would be tried” constitutes an abuse of discretion and requires that we vacate the class certification order. Castano, 84 F.3d at 752. Accordingly, I dissent.

. The plaintiffs also requested that the district court certify a class under Rule 23(b)(1). The district court declined to address Rule 23(b)(1), on the grounds that the plaintiffs raised it for the first time their reply brief. On appeal, the plaintiffs do not raise Rule 23(b)(1) as a basis for class certification.

. Because I believe that the plaintiffs’ class fails the superiority requirement of Rule 23(b)(3), I would not reach the other issues addressed in. the majority's opinion, i.e., nu-merosity, commonality, typicality, adequacy of representation, and predominance.

. Our opinion in Watson is no longer binding precedent on our circuit. As we have explained: “While [Wafsow] was awaiting rehearing en banc, it settled. According to the Internal Operating Procedure accompanying 5th Cir. R. 35, the effect of granting a rehearing en banc is to vacate the previous opinion and judgment of the Court and to stay the mandate.” Castano, 84 F.3d at 740 n. 12 (quotation marks and citations omitted); see Watson v. Shell Oil Co., 53 F.3d 663, 664 (5th Cir.1994) (en banc).

. The plaintiffs suggest in a footnote that we should "disregard” the fact that the disparate sources of illness they allege (e.g., smoke, temperature, germs, dust, fumes) might preclude class certification. They argue that a magistrate judge’s ruling prevented them from discovering the precise nature of the defects in the ventilation system. The magistrate's discovery ruling is not before us on appeal. Even if it could be shown that discovery was insufficient, it does not follow that we must approve a class that fails to meet the requirements of Rule 23. Rather, we must decertify such a class, even if further discovery may eventually justify class treatment. See Alabama v. Blue Bird Body Co., 573 F.2d 309, 323 (5th Cir. 1978) (decertifying class where discovery was insufficient to determine whether common issues existed).

. The majority suggests that the district court can avert this problem by instructing the class jury to answer special verdicts as to each hazard alleged by the plaintiffs. However, such special verdicts are not included in the district court's trial plan.