HIGHLAND *v.* THE HARRIET C. KERLIN.

*(Circuit Court, D. South Carolina. February 1, 1890.)*

1. SEAMEN—WAGES—SICKNESS.
   Libelant shipped on board a schooner for a voyage from Philadelphia to Charleston and back, not to exceed three months in duration. The schooner completed the voyage in a little over a month. A few days after leaving Philadelphia, libelant was taken sick, and was unable to do any work until the schooner reached Charleston, where he helped get the vessel to the wharf, and was then sent to the hospital, the vessel returning without him. *Held*, that he was entitled to recover wages for the whole voyage.

2. SAME—BREACH OF CONTRACT.
   The fact that he had a short time before shipping on the schooner been in hospital for treatment for a, disease different from that by which he was afterwards attacked, but had been discharged from hospital as cured, does not show such a breach of the condition that he was able-bodied as to avoid the contract for wages.

3. SAME—DAMAGES.
   It appeared that, after the libelant left the schooner for the hospital, the master and mate, who had shown him all kindness, and for the purpose of further favoring him, collected his clothes and deposited them in the wharf office for him. *Held*, that the libelant could not maintain a claim for damages because some of his clothes were missing.

In Admiralty. Libel for wages and damages.
*C. B. Northrop*, for libelant.
*H. Sinkler*, for respondent.

SIMONTON, J. The libelant shipped before the mast on the schooner Harriet C. Kerlin, at Philadelphia, on 21st November last. The shipping articles provided for a voyage from Philadelphia to Charleston and

back to a port north of Hatteras, not to exceed three months, wages $20 per month. The schooner made the voyage and returned to Philadelphia, consuming a month and a few days. This terminated the engagement. *The Caroline Miller*, 36 Fed. Rep. 508. The schooner began her voyage, and went down the Delaware as far as Chester. There she anchored. When she resumed her voyage, the next day, libelant was sick, disabled from work, and so continued until they reached Charleston bar. He then came out and worked until the schooner came to the wharf, the same day, and continued work the next day. That night he was sent to the hospital, and was not well enough to return to the schooner again. He had been in hospital in Charleston on a former occasion, sick with chronic diarrhea, and had been advised to go north. He did this, went into hospital at Philadelphia, and was discharged, recovered, a few days before coming on this schooner. He was shipped by an agent of her master, and was met by the mate on his arrival, who saw that he had been sick, but made no objection to him. When taken ill, he had cramps in the stomach, but no diarrhea. The master and mate treated him with great kindness, doing all in their power for him on ship-board, and getting him to hospital. When the schooner was about to sail they had his clothes put up in a bag and hand-sack, and notified him by telephone that they were left for him in the wharf office, and received his reply, "All right." When he examined the bag and valise, libelant found some articles missing. He now brings suit for full wages for the whole voyage, crediting five dollars received on account, and demands also the value of the missing clothing.

Respondent insists that the essential condition of the contract of shipping as seaman was that libelant was able-bodied; that his illness, occurring so soon after his arrival on board, shows that this condition was not fulfilled; and that the sum of five dollars paid by the master to libelant was given and received as full compensation. From the little evidence given at the hearing, it would seem that libelant had recovered from his sickness, and was able to go to work; that his failure to perform his duties did not arise from debility from disease, but was the consequence of an acute attack of a different disease from that which attacked him before. If he had made false representations, or had used any effort to mislead the master, it might be different. Nothing of this appears. I am constrained by the authorities to give him his full wages, notwithstanding he did not earn them. Judge STORY in *Emerson v. Howland*, 1 Mason, 52, deciding this point, says that by the rule of the civil law if a party be prevented, without his default, from performing full services, he is still entitled to the stipulated hire for the whole period for which he contracted to serve. He shows that this rule is followed in the maritime codes of foreign countries. This is certainly the case in the Laws of Oleron, art. 7, 1 Pet. Adm. XVI., and in the Laws of Wisbuy, 1 Pet. Adm. LXXIV., and in the Laws of the Hanse Towns, art. 45, 1 Pet. Adm. CVI. See, also, *Hart v. The Littlejohn*, 1 Pet. Adm. 116. In this case the same judge discusses this rule in full. He shows that in every case in which a seaman, through no fault of his own, is disabled, he

is entitled to his full wages. "The defect of service is no more to be imputed to him than if he had fallen sick on the voyage, in which case his wages are due without deduction." "Now it is clear that in case of sickness preventing a performance of duty, if the malady be not occasioned by the mariner's malconduct, the full wages are payable, whatever expense or loss the ship may incur on this account." "If a sailor dies on the voyage, his heirs shall have his full wages." *Seamen* v. *The Fair American*, Bee, 134; *Nevitt* v. *Clarke*, Olcott, 316. Let him have his wages for the time consumed in the voyage from Philadelphia to Charleston and back, less five dollars paid him. The conversation accompanying this payment does not show accord and satisfaction, and no consideration is stated for the surrender of his claim by the seaman, even if he did consent to take five dollars in full. This would be so held at common law between strangers. *A fortiori* the rule will be applied in a transaction between a master and his seaman. With regard to the claim for clothing, libelant's counsel has pressed this point. There can be no doubt that when a seaman has been compelled to leave the ship unlawfully he can sue in admiralty for damages, just as he could sue in a law court in an action on the case; that in estimating damage there will be included not only his wages, but every other loss, including the loss of clothing, by reason of this unlawful conduct. *The Maria*, Blatchf. & H. 331. In the present case there is no suspicion of bad conduct on the part of the master or of his mate. The man was taken sick by no fault of either of them, and was kindly treated by them. When they found that he could not go on the return voyage, they gathered his clothing, as well as they could in his absence, and provided for his getting it. No action on the case could lie against them. The libelant does not get his wages as damages for non-performance of contract on the part of the master. He gets them pursuant to and in performance of his contract, whereby he purchased the time of the libelant for a stipulated period. The time having become valueless through no fault of libelant, respondent bears the loss. See *Emerson* v. *Howland*, 1 Mason, 52. This part of the claim is disallowed. The case is a hard one. A court cannot be influenced in its conclusions of principles of law by this consideration. It can recognize it, however, in adjusting the costs. Let respondent pay the costs of the marshal and clerk, and libelant pay his own docket fee.