UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 89-2965
_____


THOMAS GAVAGAN,

                                        Plaintiff-Appellant,

                        versus

UNITED STATES OF AMERICA,

                                        Defendant-Appellee.

_____

Appeals from the United States District Court for the
Southern District of Texas
_____
(March 23, 1992)


Before GARWOOD and WIENER, Circuit Judges, and VELA, District
Judge.[*]

GARWOOD, Circuit Judge:

    Plaintiff-appellant Thomas Gavagan (Gavagan) brought this suit

against the United States pursuant to Public Vessels Act, 46 U.S.C.

§ 781, seeking damages, under the Jones Act, 46 U.S.C. § 688, and

the general maritime law, for personal injury sustained while

serving as a seaman on the "American Explorer," a vessel owned by

the United States.[1]  Following a bench trial, the district court

_____

\[*]  District Judge of the Southern District of Texas sitting by
designation.

[1]    The Public Vessels Act makes available to plaintiffs the
same causes of action against the United States that they would
have against private parties.  *Mejia v. United States*, 152 F.2d

rendered judgment for the United States.  Gavagan appeals.  We affirm.

## Facts and Proceedings Below

Gavagan brought this suit for the fracture of a finger on his right hand that occurred on May 30, 1984, while he was trying to turn a valve on the tanker American Explorer.  At the time of the injury, the same finger was healing from a fracture sustained on January 7, 1984, in an accident on land unrelated to his employment.  In an operation after the January fracture, a fixation device consisting of wire, pins, and a screw was inserted in the finger.  Gavagan received therapy after the operation and on May 7, 1984, his treating, personal physician released him as fit for duty.

At the time he was released, the hardware was still in his finger and was not yet due for removal.  The finger had not healed completely and was weaker than normal.  Gavagan still experienced pain in the finger and knew to exercise care when using it.

Upon being released, Gavagan bid for a job and received a pre-employment physical examination.  The examining report, signed by both the examining physician and Gavagan, indicated that he had not suffered any injuries.  Gavagan did not reveal the condition of his finger to the examining physician, although the scar from the operation was visible.

Gavagan then, on May 29 or May 30, joined the American Explorer as an able-bodied seaman.  He knew an able-bodied seaman's

---

686, 687-88 (5th Cir. 1945), *cert. denied*, 328 U.S. 862 (1946).

duties included opening and closing valves on a tanker. On May 30, the tanker's boatswain, under the direction of the chief mate, ordered Gavagan and an ordinary seaman to open and close the tanker valves and to apply grease and oil to them. Though greasing and oiling were not part of his duties, he was not performing outside his job description.

Gavagan and the ordinary seaman had been opening and closing valves for approximately ninety minutes without difficulty. They then came to the "T5" valve and, Gavagan testified, "we put the oil and everything else and we both grabbed ahold and really pulled on it. At that time it just didn't give. It didn't what we call break open. At that time I felt a tremendous sharp pain in my right hand." Gavagan also stated that he first felt the pain "immediately, the first time I pulled on that valve."

The chief mate noticed the seamen's situation and approached them. He ordered them to try again and, after the valve still would not open, he ordered Gavagan to enter the below deck tank to determine what was preventing the valve from opening. Gavagan entered the tank and discovered that duct tape was wrapped around the stem of the valve. After he cut off the tape, the valve opened easily.[2]

---

[2] There was some indication that the tank had earlier been sprayed with some substance, and in connection with that process tape had been put around this part of the valves (in the tanks) to keep the spray off them; apparently, the tape had been removed from the other valves, but not from this one (T5). On May 30, the tanks were all empty, and they were not going to be filled on this voyage.

The district court entered extensive findings of fact and conclusions of law.[3] Its findings of fact are essentially as summarized in the text above. These findings contained no express determinations of negligence or unseaworthiness.

In its conclusions, the district court first set out the general legal principles applicable to recovery for unseaworthiness under the general maritime law and for negligence under the Jones Act. It recognized that the "shipowner owes to seamen a duty to provide a seaworthy vessel. Such obligation is a species of liability without fault; the duty imposed is absolute" and "completely independent of principles of negligence." As to the Jones Act, the court observed that "plaintiff must show negligent breach of duty and proximate cause. . . . Even the slightest employer negligence is sufficient for a finding of liability to an injured seaman. . . . The issue of proximate cause turns on whether the employer's actions contributed even in the slightest degree and is not destroyed merely because the plaintiff also contributed to his own injury."[4] As to contributory negligence, the court noted that "[t]he burden is upon the shipowner to prove that plaintiff was guilty of contributory negligence"; that "contributory negligence is not a bar to a plaintiff's recovery under the Jones Act, but serves to mitigate or apportion damages in

---

[3] Its opinion states the findings are to be treated as conclusions, and vice versa, as appropriate.

[4] Citing our decision in *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 223 (5th Cir. 1975), the court also noted that "the defendant's negligence must have been a substantial factor in bringing about the plaintiff's harm. . . ."

4

accordance with the doctrine of comparative negligence"; and that "under both unseaworthiness and negligence theories, contributory negligence operates to apportion damages . . . based upon relative fault."

Up to this point, the court had not expressly spoken to the unseaworthiness of the vessel, the negligence of either party or the relationship of any of these matters to Gavagan's injury. It did so in the next portion of its conclusions, as follows:

> "Upon review of the evidence presented, I conclude that the taped valve assembly was unseaworthy in the condition as it existed when plaintiff and Mr. O'Hagen attempted to open it. . . . [T]he purpose of the valves on the ship was to regulate the flow of liquid cargo going into and out from the storage tanks, and that the valves were intended to be operated by hand. There is no doubt that the <u>taped valve stem prevented the valve assembly from functioning in its normal manner</u>. Hence, the valve was not fit for its intended purpose.
>
> "I also conclude that <u>plaintiff's actions were the sole and proximate cause of his own injuries</u>, since he failed to exercise due care in his employment with regard to his injured finger. . . . [Plaintiff] did have peculiar knowledge about the state of his finger. Plaintiff knew at the time . . . that the screw, pins and wires remained in his hand, that he did not have full use of his hand and that he should not strain his hand or place undue stress upon it. However, he failed to disclose the impaired state of his finger to either the chief mate or the boatswain. . . . [P]laintiff failed to act in a manner that would minimize the dangers of re-injuring his hand. . . . I also must conclude that <u>defendant's negligence in failing to untape the valve assembly was not the proximate cause</u> of plaintiff's injury, but was <u>at most, a mere condition</u> upon which plaintiff's injuries were received, and <u>is not a basis for imposition of liability upon the defendant</u>. . . . Therefore, since <u>all of the negligence which caused the injury resulted from plaintiff's negligence, plaintiff is not entitled to recover</u> under his general maritime law claim of unseaworthiness, nor is he entitled to recover

under his claim of negligence based upon the Jones Act." (Footnotes omitted; emphasis added).[5]

## Discussion

On appeal Gavagan urges that the judgment be "reversed and rendered" in his favor as to liability on the basis of three claims of error. Two of these relate to the district court's determination that Gavagan was to any extent contributorily negligent, and each of these two essentially argues that the evidence is insufficient to sustain such a finding, especially given that the burden of proof was on the defendant. In a bench tried case, a trial court's findings respecting negligence, cause, and proximate cause are findings of fact reviewed under the clearly erroneous standard. *See, e.g., Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1352 (5th Cir.), *cert. denied*, 109 S.Ct. 497 (1988) (Jones Act case; "Questions of negligence and causation in admiralty cases are treated as fact questions. . . . Findings of fact in admiralty cases are binding unless clearly erroneous."); *Cheek v. Williams-McWilliams Co., Inc.*, 697 F.2d 649, 652 (5th Cir. 1983) ("Questions of negligence and proximate cause in admiralty cases are treated as fact questions" in respect to which a trial court's "findings will not be reversed unless found to be clearly erroneous"); *Noritake Co., Inc. v. M/V Hellenic Champion*, 627 F.2d 724, 727-728 (5th Cir. 1980) (". . . the appellant has the burden of establishing that the district court's finding was clearly

---

[5] The quoted mention of "defendant's negligence in failing to untape the valve assembly" is the district court's only reference to (or possible finding of) any negligence on the part of the defendant.

6

erroneous. . . . Questions of negligence in admiralty cases are treated as factual, and are thus subject to the clearly erroneous standard."). There is substantial evidence that Gavagan was negligent, and that this negligence proximately caused his injury, as the district court found, and, reviewing the record as a whole, we are not "left with the definite and firm conviction that a mistake has been committed," *Noritake* at 728. We hold that Gavagan has not established that the district court's findings in this respect are clearly erroneous.

Gavagan's remaining claim is that the district court "erred in finding one hundred percent contributory negligence against plaintiff." Gavagan is arguing here, in essence, that, because the district court found that the defendant negligently failed to untape the valve and (at least inferentially) that Gavagan's finger would not have been injured had the valve not been thus immobilized, therefore, almost as a matter of law, the defendant's negligence was a cause of Gavagan's injury for which defendant is liable to some extent, particularly under the Jones Act, notwithstanding that Gavagan's contributory negligence may have also been a cause (or proximate cause) of the injury.

We view the matter differently. Initially, we recognize--as the district court expressly did--that contributory negligence does not bar recovery under the Jones Act (or for unseaworthiness) and that, while we have said that proximate cause is applicable in Jones Act cases,[6] "[t]he question of proximate cause . . . under

---

[6]    *See, e.g., Myles v. Quinn Menhaden Fisheries, Inc.*, 302 F.2d 146, 150 (5th Cir. 1962) (". . . a claim under the Jones Act. . .

7

the Jones Act turns on whether the actions of the defendant contributed to the injury even in the slightest degree. Proximate cause is not destroyed merely because the plaintiff may also have contributed to his own injury. . . ." *Sanford Bros. Boats, Inc. v. Vidrine*, 412 F.2d 958, 966 (5th Cir. 1969).[7] Nevertheless, we have expressly recognized that even in Jones Act cases the necessary causal connection requires more than simple "but for" cause. As we said in *Chisholm v. Sabine Towing & Transportation Co., Inc.*, 679 F.2d 60 at 63 (5th Cir. 1982), "this Court has rejected, in a Jones Act case, the so-called 'but for' argument. *Spinks v. Chevron Oil Company*, 507 F.2d 216, 222 (5th Cir. 1975)." The negligence must be "a legal cause" of the injury. *Chisholm* at 67.

The questions of legal cause and scope of duty have frequently been conflated or confused. Harper, James & Gray, *The Law of Torts* (2d ed. 1986), describes as "the prevailing view" the rule that

---

requires a finding both of negligent breach of duty . . . and proximate cause.").

[7] We have also stated that the same general negligence ("ordinary prudence") and causation standards apply to both employer and employee in Federal Employers' Liability Act (and, by extension, Jones Act) cases. *See Page v. St. Louis Southwestern Railway Co.*, 349 F.2d 820, 823-24 (5th Cir. 1965) (also stating that in jury instructions in such cases "there is really no place for 'proximate cause' as such," characterized as "awkward, but outmoded, dialectic").

As to unseaworthiness cases, however, a more traditional proximate cause standard is applied. As we said in *Johnson*, 845 F.2d at 1354: "There is a more demanding standard of causation in an unseaworthiness claim than in a Jones Act negligence claim. . . . To establish the requisite proximate cause in an unseaworthiness claim, a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness."

8

"[t]he obligation to refrain from that particular conduct is owed only to those who are foreseeably endangered by the conduct and <u>only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous</u>. Duty, in other words, is measured by the scope of the risk that negligent conduct foreseeably entails." *Id.*, Vol. 3, § 18.2 at 655 (emphasis added; footnote omitted).

However, the authors note that this principle "is, of course, inextricably bound up with the problems of proximate cause," *id.* n.4, and go on to observe that "in judicial decisions the [same] result is often reached through reasoning in terms of proximate cause" and that "a professional generation or two ago the 'cause' reasoning was used almost exclusively." *Id.* at 663. *See also, id.*, Vol. 4, § 20.2 at 92 n.5, 111-112.

The same approach is reflected in the *Restatement (Second) of Torts* §§ 281 (Statement of the Elements of a Cause of Action for Negligence) and 430 (Necessity of Adequate Causal Relation). Section 281 requires that "the conduct of the actor" be "negligent with respect to the other, or a class of persons within which he is included" and be "a legal cause of the invasion." These requirements are explained as follows in comments *e* and *f*:

"*e.    The hazard problem.*    Conduct is negligent because it tends to subject the interests of another to an unreasonable risk of harm.  Such a risk may be made up of a number of different hazards, which frequently are of a more or less definite character.   The actor's negligence lies in subjecting the other to the aggregate of such hazards.  In other words, the duty established by law to refrain from the negligent conduct is established in order to protect the other from the risk of having his interest invaded by harm resulting from one or more of this limited number of hazards.

". . . .

"*f.  Harm beyond the risk*.  Where the harm which in fact results is caused by the intervention of factors or

9

forces which form no part of the recognizable risk involved in the actor's conduct, the actor is ordinarily not liable. . . .

"**Illustration:**

"3.  A gives a loaded pistol to B, a boy of eight, to carry to C.  In handing the pistol to C the boy drops it, injuring the bare foot of D, his comrade.  The fall discharges the pistol, wounding C.  A is subject to liability to C, but not to D."

These same principles, which section 281 addresses in a negligence context, are again considered in section 430, entitled "Necessity of Adequate Causal Relation."  Section 430 provides that in order for "a negligent actor" to "be liable for another's harm, it is necessary . . . that the actor's conduct be negligent <u>toward</u> the other" and "that the negligence of the actor be a legal cause of the other's harm" (emphasis added).  The comments give the following explanation:

"*a.    Relation of negligence problem to cause problem.*  The conditions which are necessary to make the act negligent in respect to the harm of which the other complains, as set forth in § 281, Clause (b) and Comment thereon, may be summarized as follows:
"The actor's conduct, to be negligent toward another, must involve an unreasonable risk of:
"(1)  causing harm to a class of persons of which the other is a member and
"(2)  subjecting the other to the hazard from which the harm results.
"Until it has been shown that these conditions have been satisfied and that the actor's conduct is negligent, the question of the causal relation between it and the other's harm is immaterial.  While the causal relation between the actor's conduct and the other's harm is, in theory, immaterial until the actor's negligence is established, in practice, courts often consider the causation question without inquiring into the negligence problem. . . .
"*b*.  If the actor's misconduct is negligent and not intentional, the actor cannot be liable to another harmed by it, no matter how directly, unless his conduct was negligent toward the other as involving an unreasonable

10

risk of harm to him, or to a class of which he is a member. . . .

"*c*. Harm may be sustained as a consequence of conduct which is negligent only because, and in so far as, it subjects another to some particular harm. But the harm may result in some other manner than through the other's exposure to this hazard. If so, there can be no liability even though in all other respect the manner in which the harm is brought about is such as would make the actor liable. . . .

". . . .

"*e*. Although the rule stated in this Section is stated in terms of the actor's negligent conduct, the necessity that the conduct be a legal cause of the harm is equally applicable where the conduct . . . is such as to result in strict liability. . . ."

Our Court has adopted these principles in respect to maritime torts, as reflected by the following from our opinion in *Consolidated Aluminum Corp. v. C.F. Beam Corp.*, 833 F.2d 65, 67 (5th Cir. 1987);

"The analysis of a maritime tort is guided by general principles of negligence law. . . . Under those principles a tortfeasor is accountable only to those to whom a duty is owed. . . .

". . . .

"'Duty . . . is measured by the scope of the risk that negligent conduct foreseeably entails.' Harper, James & Gray, *The Law of Torts, Scope of Duty in Negligence Cases* § 18.2 at 655 (2d ed. 1986). The duty 'may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct, and not to other interests even of the same plaintiff which may in fact happen to be injured.' *Id*. at 660 . . . ."

Here, we believe it evident that what the district court in substance found was that any negligence of defendant was not negligence with "respect to the harm of which" Gavagan complains. In other words, that while leaving the valve taped may have been negligent because the valves were not designed to operate that way and, by requiring entry into the tank to remove the tape before the

11

valve could be turned, this prevented speedy and efficient operation of the valve (and perhaps any operation of it, if the tank were full), nevertheless this did not expose seamen to an unreasonable or foreseeable risk of injury to their hands or fingers from trying to turn the valve handle and thus was not negligent in <u>that</u> respect. Indeed, there is virtually no evidence--expert or otherwise--that the taped valve presented any unreasonable or foreseeable risk of injury of such a kind, and no one else--other than Gavagan, who alone knew he should not strain with his wired-up hand--was so injured.[8] The district court did not find--and the evidence did not require it to find--that injury to the hand or finger of a seaman trying to turn a taped valve was sufficiently likely so that leaving the valve taped was for <u>that</u> reason unreasonably dangerous and hence negligent. The district court did not find--and the evidence did not require it to find--

---

[8] The only possible evidence favorable to Gavagan on this issue was his testimony:

> "Q. I am not asking you as a lawyer, Mr. Gavagan, but can you tell The Court what you think the ship failed to do that caused your injury?

> "A. I think there was a little unseaworthiness in that valve if they didn't tell us that. You know, it was a situation of unsafe situation and the chief mate or somebody should have known and instructed us accordingly.

> "As I stated earlier having us do a job that we are not qualified for by the U.S. Coast Guard."

The district court was not bound to accept this vague and conclusory testimony from an interested witness. Indeed, the court noted in its findings that "In the Statement of Person Claiming Injury, plaintiff stated that he did not blame anyone and that he did not know when the break took place."

that Gavagan's injury resulted from any risk posed by failing to untape the valve that may have rendered that failure negligent. Thus the district court's determinations, that "plaintiff's actions were the sole . . . cause of his own injuries," that "defendant's negligence in failing to untape the valve assembly . . . was at most a mere condition . . . and is not a basis for imposition of liability upon the defendant," and that "all of the negligence which caused his injury resulted from plaintiff's negligence," are neither clearly erroneous nor legally incorrect, and they constitute a legally proper basis for the district court's denial of recovery under the Jones Act and the general maritime law. In essence, the district court was not persuaded by a preponderance of the evidence that leaving the valve taped exposed those who might try to turn it to a sufficiently great or foreseeable risk of injury as to constitute negligence, even though leaving the tape on may have been negligent for other reasons. We cannot say that such a finding, particularly as to an issue on which plaintiff had the burden of proof and persuasion, is clearly erroneous. Moreover, that finding entitled the defendant to judgment.

Accordingly, the district court's judgment is

AFFIRMED.