**Leroy JOHNSON**

v.

**CENAC TOWING, INC., et al.**

**Civil Action No. 06–914.**

United States District Court,
E.D. Louisiana.

March 2, 2009.

---

James Edmon Cazalot, Jr., H. Edward Sherman, H. Edward Sherman, APLC, New Orleans, LA, Travis Jasper Causey, Jr., Colvin Law Firm, Gretna, LA, for Leroy Johnson.

Randolph J. Waits, Matthew F. Popp, Waits, Emmett & Popp, New Orleans, LA, Jason R. Kenney, Staines & Eppling, Metairie, LA, for Cenac Towing, Inc.

### ORDER AND REASONS

SARAH S. VANCE, District Judge.

This matter is before the Court on remand from the Fifth Circuit. In a November 2, 2008, mandate, a three-judge panel of the Fifth Circuit vacated this Court's judgment in favor of plaintiff Leroy Johnson and remanded with instructions for the Court to reevaluate its findings as to Johnson's contributory negligence. Having reviewed the mandate and the record, the Court now rules as follows.

## I. BACKGROUND

The facts of this maritime personal injury case are set forth in detail in this Court's Order and Reasons of December 27, 2006. *See Johnson v. Cenac Towing Inc.*, 468 F.Supp.2d 815, 819–25 (E.D.La. 2006) [hereinafter *Johnson I*]. For the purposes of this order, the Court will recount only those facts that bear directly on the Fifth Circuit's mandate. The Court also readopts its previous findings of fact and conclusions of law, except as noted herein.

Plaintiff Leroy Johnson began working as a tankerman for defendant Cenac Towing in May 2003. In May 2004, Cenac terminated Johnson's employment, but it rehired him one year later, in May 2005. This Court previously found that Johnson had suffered a number of injuries before he was hired by Cenac and that he willfully concealed his injuries from Cenac and its medical personnel when he reapplied for a position in 2005. *See Johnson I*, 468 F.Supp.2d at 822–23. Nevertheless, when Cenac's medical examiner performed pre-employment physicals in 2003 and 2005, which included full range of motion tests and lumbar spine x-rays, he "determined that Johnson could be considered for 'employment without restriction.'" *Id.* at 822. And despite the pre-existing injuries, the Court found that "Johnson had performed work that involved heavy lifting from 2002 until his December 14, 2005 accident without any difficulty." *Id.* at 823.

Johnson was assigned to the Cenac tug M/V URSULA CENAC on the date of the accident. While the vessel was standing by for dock space in Mobile, Alabama, Johnson and fellow tankerman Louis Celestine began to connect a crossover hose between two barges that were in tow behind the URSULA CENAC. The crossover hose, which was used to load and discharge product from the barges, was approximately twenty-five feet long and six inches in diameter. It weighed approximately 175 pounds, with much of the weight distributed toward its iron-flanged end.

Johnson and Celestine lifted the hose and began to move it from its storage location, Johnson carrying the flanged end and Celestine carrying the belly. As they moved the hose, Celestine tripped on a hatch cover located aboard one of the barges and dropped his portion of the hose. Johnson, who was left to bear an increased amount of weight, exclaimed that he had injured his back. Celestine recalled looking over at Johnson and seeing Johnson bent over "like when you lose your breath."[1] Johnson testified that right after the accident happened his back started to burn, and he told Celestine and another Cenac employee that he had to return to the boat to seek medical help.[2] At some point shortly after Johnson returned to the boat, he said that he noticed a wet spot in his underwear, but he did not mention it to anyone aboard the vessel.[3]

Johnson filed a seaman's complaint in this Court on February 22, 2006, asserting claims against Cenac for Jones Act negligence, unseaworthiness, and maintenance and cure. Cenac presented a number of defenses, two of which are relevant at this stage. First, Cenac argued that Johnson was not entitled to maintenance and cure because he willfully concealed his preexisting medical conditions at the time he was hired. Second, Cenac argued that Johnson's willful concealment amounted to contributory negligence, and prayed that any

---

**1.** Trial Testimony of Louis Celestine.

**2.** Trial Testimony of Leroy Johnson.

**3.** Trial Testimony of Leroy Johnson.

negligence award be reduced to account for Johnson's negligence.

The Court heard the parties' arguments and evidence during a two-day bench trial in December, 2006. After weighing the evidence in light of the relevant legal standards, the Court found for Johnson on the Jones Act claim as to his back injury and for Cenac on the unseaworthiness and maintenance and cure claims.

█ With respect to the maintenance and cure claim, the Court found that Johnson's willful concealment of his previous injuries barred recovery under the doctrine of *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir.1968). In *McCorpen* and subsequent cases, the Fifth Circuit has held that a seaman who willfully conceals a pre-existing injury from his employer may not recover damages for maintenance and cure if that injury is reactivated or aggravated during a later voyage. *See Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005); 1B BENEDICT ON ADMIRALTY § 46 (2008). A maritime employer who seeks to invoke the *McCorpen* defense must prove that:

(1) the claimant intentionally misrepresented or concealed medical facts;

(2) the non-disclosed facts were material to the employer's decision to hire the claimant; and

(3) a connection exists between the withheld information and the injury complained of in the lawsuit.

*Brown,* 410 F.3d at 171. Applying this test to the facts of Johnson's employment with Cenac, the Court concluded that Johnson was not entitled to maintenance and cure. *See Johnson I,* 468 F.Supp.2d at 833–34.

Turning to Johnson's Jones Act claim, the Court found that Johnson's co-worker, Louis Celestine, caused the hose accident through his negligence and that Cenac was therefore liable for Johnson's injuries. *See id.* at 825. The Court then considered and rejected Cenac's argument that Johnson's pre-employment misrepresentations made him contributorily negligent for his own injuries:

[T]he Court rejects the argument that if not for Johnson's misrepresentations, this accident would not have happened. The condition of Johnson's back and neck did not contribute to causing the accident. That Johnson sustained injuries at least three years before the December 14, 2005 accident does not make him contributorily negligent.

*Johnson I,* 468 F.Supp.2d at 826.

The Court entered judgment on Johnson's Jones Act claim on December 28, 2006, and Cenac timely appealed. In a mandate issued November 3, 2008, a three-judge panel of the Fifth Circuit vacated the judgment and remanded for this Court to "reevaluate its findings" on the contributory negligence issue. *Johnson v. Cenac Towing, Inc.,* 544 F.3d 296, 304 (5th Cir. 2008) [hereinafter *Johnson II* ]. The court of appeals surveyed several Jones Act cases touching upon contributory negligence and noted that

it appears that contributory negligence may be found where a seaman has concealed material information about a preexisting injury or physical condition from his employer; exposes his body to a risk of reinjury or aggravation of the condition; and then suffers reinjury or aggravation [of the] injury.

*Id.* at 303–04. The panel then remarked that it was "unsure about whether the [district] court fully analyzed the potential for contributory negligence," citing what it perceived as "tension" between this Court's finding on the third prong of the *McCorpen* test—i.e., that there was a "causal link between Johnson's misrepre-

sentation and his injuries," *Johnson I,* 468 F.Supp.2d at 833—and its finding that Johnson did not negligently cause or contribute to his injuries through his misrepresentations. *Johnson II,* 544 F.3d at 304. In light of the uncertainty, the panel felt that it "must remand for the [district] court to reevaluate its findings on this issue." *Id.* It specifically declined, however, to "instruct how the court should ultimately rule on whether Cenac has proved Johnson's contributory negligence in deliberately exposing himself to heavy labor with a weakened back." *Id.*

## II. DISCUSSION

### A. Maintenance and Cure

▮ Some background on the seaman's action for maintenance and cure will bring this Court's earlier findings into focus. The maritime employer's duty of maintenance and cure, which dates at least to the medieval sea codes, *see The Osceola,* 189 U.S. 158, 169–71, 23 S.Ct. 483, 47 L.Ed. 760 (1903); *Harden v. Gordon,* 11 F.Cas. 480, 482–83 (C.C.D.Me.1823) (No. 6047), obligates him to pay for the lost wages, medical care, food, lodging, and other incidental expenses of a mariner who falls ill or is injured while in the service of the vessel. *See Aguilar v. Standard Oil Co. of N.J.,* 318 U.S. 724, 730, 63 S.Ct. 930, 87 L.Ed. 1107 (1943); *The Osceola,* 189 U.S. at 175, 23 S.Ct. 483. The duty is practically absolute. Unlike an employer's duties under the Jones Act, for example, liability for maintenance and cure is "in no sense . . . predicated on the fault or negligence of the shipowner." *Aguilar,* 318 U.S. at 730, 63 S.Ct. 930. Because the duty is so broad, maintenance and cure has at times been compared to mandatory employer-provided health and accident insurance. *See Lindquist v. Dilkes,* 127 F.2d 21, 23–24 (3d Cir.1942); GILMORE & BLACK, THE LAW OF ADMIRALTY 281–82 (2d ed. 1975).

▮ In keeping with the absolute nature of the right, a plaintiff's burden of proof on a maintenance and cure claim is slight: he need only establish that he was injured or became ill while "subject to the call of duty as a seaman." *Aguilar,* 318 U.S. at 732, 63 S.Ct. 930; *see also* 1 SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6–28; FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS: CIVIL § 4.11 (2006 ed.). It is not necessary for the claimant to show that his injury or ailment originated during the term of his employment. The employer is liable even for pre-existing conditions that manifest themselves during the voyage. *See Jauch v. Nautical Services, Inc.,* 470 F.3d 207, 212 (5th Cir.2006) (per curiam); *McCorpen,* 396 F.2d at 548; *see also Calmar S.S. Corp. v. Taylor,* 303 U.S. 525, 529, 58 S.Ct. 651, 82 L.Ed. 993 (1938); *Stevens v. McGinnis, Inc.,* 82 F.3d 1353, 1357–58 (6th Cir.1996).

▮ There are defenses to a claim for maintenance and cure, but, as the Fifth Circuit has noted, they "are few and narrowly applied." *Silmon v. Can Do II, Inc.,* 89 F.3d 240, 242 (5th Cir.1996). First, it has long been the rule that a seaman who causes his own injury through "some wilful misbehavior or deliberate act of indiscretion" will not be entitled to receive maintenance and cure. *Aguilar,* 318 U.S. at 731, 63 S.Ct. 930; *see also* RULES OF OLERON, art. 6, reprinted in 2 THE BLACK BOOK OF THE ADMIRALTY 217 (Sir Travers Twiss ed. & trans., London, Longman & Co. 1873); ABBOTT ON SHIPPING 258–59 (J.C. Perkins ed., Boston, Little & Brown 1846). As the Supreme Court has emphasized time and again, however, the seaman's behavior must be "positively vicious" before he will be denied maintenance and cure. *Warren v. United States,* 340 U.S. 523, 528, 71 S.Ct. 432, 95 L.Ed. 503 (1951). "[N]egligence or contributory negligence

of even the grossest kind will not itself qualify as misconduct and forfeit the right." GILMORE & BLACK, *supra*, at 291; *see also Farrell v. United States*, 336 U.S. 511, 517, 69 S.Ct. 707, 93 L.Ed. 850 (1949) (holding that seaman whose injury was "due to no negligence but his own" was nevertheless "entitled to the usual measure of maintenance and cure at the ship's expense"); *Aguilar*, 318 U.S. at 731, 63 S.Ct. 930 ("Conceptions of contributory negligence, the fellow-servant doctrine, and assumption of risk have no place in the liability or defense against [a claim for maintenance and cure]. Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection.").

In addition to arguing that the seaman's own wanton behavior caused his injuries, the employer may also invoke what has become known in this circuit as the *McCorpen* defense. Named for the 1968 case *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir.1968), but of earlier origins, *see Chandler v. The Annie Buckman*, 5 F.Cas. 449, 450 (S.D.N.Y.1853) (No. 2591A); *Writer v. The Richmond*, 30 F.Cas. 718, 718 (D.Pa.1807) (No. 18,104), the *McCorpen* defense relieves a maritime employer of his obligation to pay for an injured seaman's maintenance and cure if the employer can demonstrate that the seaman willfully concealed a pre-existing illness or injury from the employer and then suffered a reactivation or aggravation of the injury while in service of the vessel. *See McCorpen*, 396 F.2d at 548; 1B BENEDICT ON ADMIRALTY § 46 (2008). Although the Fifth Circuit has never fully explained the basis for this doctrine, it appears to be justified by analogy to the law of insurance. *See Lindquist*, 127 F.2d at 23–24; *Hazelton v. Luckenbach Steamship Co.*, 134 F.Supp. 525, 527 (D.Mass.1955). Because a maritime employer essentially insures his seamen's health for the duration of each voyage, it is important for him to know what risk he is assuming when he extends an offer to a job applicant. Just as an insurance policy may be avoided on the ground that the insured concealed information that was "material to the risk," 6 COUCH ON INSURANCE § 84:4 (3d ed. 2008), so too may the maintenance and cure obligation be avoided on the ground that the seaman concealed medical facts that "were material to the employer's decision to hire the claimant." *Brown*, 410 F.3d at 171. Indeed, a number of states have adopted the same rule of avoidance in workers' compensation cases, which bear many similarities to seamen's actions for maintenance and cure. *See, e.g., Pouncil v. Kansas Employment Sec. Bd. of Review*, 268 Kan. 470, 997 P.2d 715 (2000); *Wise v. J.E. Merit Constructors, Inc.*, 707 So.2d 1214 (La.1998); *Shaw's Supermarkets, Inc. v. Delgiacco*, 410 Mass. 840, 575 N.E.2d 1115 (1991).

In keeping with the maritime law's protective attitude toward seamen, however, intentional concealment of a material fact is not by itself sufficient to relieve the employer of his obligations. *See Brown*, 410 F.3d at 175. To prevail on the *McCorpen* defense, the employer must also prove that "a connection exists between the withheld information and the injury complained of in the lawsuit." *Id.* In other words, the employer must show that there is a likelihood that the new injury is in fact a manifestation or an aggravation of the old injury. *See McCorpen*, 396 F.2d at 549 (holding that there must be a "causal link between the pre-existing disability that was concealed and the disability incurred during the voyage"). If a seaman intentionally conceals a pre-existing injury and then suffers an *unrelated* injury, the misrepresentation will be overlooked and the seaman may recover maintenance and cure. 1B BENEDICT ON

ADMIRALTY, *supra*, at § 46 ("If a seaman fails to disclose a pre-existing illness and becomes ill during the voyage, he is entitled to maintenance and cure if the pre-existing illness and the new illness are independent of each other."). To use the example relied on by the *McCorpen* court, a seaman who "made knowingly false and material misrepresentations" about his history of stomach ulcers was held to be entitled to maintenance and cure when he later developed an unrelated intestinal cancer. *Hazelton*, 134 F.Supp. at 527–28; *see also Lipscomb v. Groves*, 187 F.2d 40, 45 (3d Cir.1951) (finding that seaman's willful concealment of esophageal ailment did not bar recovery for expenses related to intestinal blockage); *Highland v. The Harriet C. Kerlin*, 41 F. 222 (C.C.D.S.C. 1890) (finding that seaman's failure to disclose a recent hospital visit did not bar recovery for expenses related to disability that was "the consequence of an acute attack of a different disease from that which attacked him before").

■ Unfortunately, the details of the "connection" requirement have sometimes been obscured by inexact language. Courts, including this Court, have often said they must look for a "causal link" between the old injury and the new injury, or between the seaman's misrepresentations and the new injury. *See Brown*, 410 F.3d at 176; *McCorpen*, 396 F.2d at 549; *Johnson I*, 468 F.Supp.2d at 832. This phrasing is adequate for most purposes, but it is erroneous insofar as it implies that the court is performing a typical causation analysis. The "connection" inquiry does not turn on whether the plaintiff's misrepresentations caused his injuries in the normal sense. A successful *McCorpen* defendant need not submit any proof that the plaintiff's omission caused the injury. Rather, the *McCorpen* defense will succeed if the defendant can prove that the

old injury and the new injury affected the same body part. *See Brown*, 410 F.3d at 176. Some courts have attempted to avoid confusion by eschewing language that carries the implication of causation, *see, e.g., Deisler v. McCormack Aggregates, Co.*, 54 F.3d 1074, 1080 (3d Cir.1995) ("[T]here must be a *nexus* between the improperly concealed material information and the disputed injury") (emphasis added); *Omar v. Sea–Land Service, Inc.*, 813 F.2d 986, 990 (9th Cir.1987) ("Fraud may bar maintenance and cure where a seaman conceals a medical condition that he knows or should know is *related to* the illness or injury for which maintenance and cure are requested.") (emphasis added), but the "causal link" language persists in many decisions.

■ The Fifth Circuit's *Brown* decision highlights the difference between the *McCorpen* "connection" analysis and standard causation analysis. In that case, the court considered whether the employer had established a "causal relationship" between the plaintiff's prior back injuries and the herniated disc injury that was at issue in the litigation. *See Brown*, 410 F.3d at 175–76. Although the plaintiff had argued that there was no medical proof that his new injury was an aggravation of his old injuries, the court found that such proof was unnecessary. In order to establish a "causal link," it was enough for the defendant to show that the old and the new injuries "were to the same location of the [plaintiff's] lumbar spine." *Id.* at 176. Whatever else might be said about this "same body part" test, it is clear that it is not a causation analysis in the ordinary sense. After all, proof that the first injury and the second injury affected the same body part does little to establish that one injury caused the other, or that the plaintiff's concealment caused the second injury. The inquiry is simply whether the new

injury is related to the old injury, irrespective of their root causes. *See id.; see also Jauch v. Nautical Services, Inc.*, 470 F.3d 207, 212–13 (5th Cir.2006) (per curiam) (finding requisite connection when new back injury was "virtually identical" to previous back injury); *Noel v. Daybrook Fisheries*, 213 F.3d 637, 2000 WL 554455 at **2 (5th Cir.2000) (table) (per curiam) (finding requisite connection when both injuries were to the "same disc"); *Vitcovich v. Ocean Rover O.N.*, 106 F.3d 411, 1997 WL 21205 at *3–*4 (9th Cir.1997) (table) (finding requisite connection when new shoulder injury was "identical" to previous "painful shoulder condition"); *Boatright v. Raymond Dugat Co., L.C.*, 2009 WL 138464 at *4 (S.D.Tex.2009) (finding requisite connection when plaintiff's "prior and current injuries [were] both to his right hip"); *Annaloro v. Marquette Transp. Co., LLC*, 2009 WL 24300 at *1 (E.D.La.2009) (finding requisite connection when "Plaintiff had a prior back injury at L4–5, the same location of the lumbar spine allegedly injured in the accident at issue"); *Jenkins v. Aries Marine Corp.*, 590 F.Supp.2d 807, 813 (E.D.La.2008) ("To find the requisite 'connection,' courts have looked to whether the injuries were identical or produced identical or substantially similar symptoms in the same part of the body."); *Loftin v. Kirby Inland Marine, L.P.*, 568 F.Supp.2d 754, 764 (E.D.Tex.2007) ("Causation is clear when an employee claims an injury in the exact same area as his previous injury."); *Bergeron v. B & J Martin, Inc.*, 2005 WL 3542898 at *4 (E.D.La.2005) (finding requisite connection when plaintiff experienced "same breathing difficulties" before employment and aboard the vessel); *Quiming v. International Pacific Enterprises Ltd.*, 773 F.Supp. 230, 236 (D.Haw. 1990) (finding requisite connection when previous injury and new injury were to different vertebral discs in lumbar area).

## B. Contributory Negligence

The Court now turns to the Fifth Circuit's mandate. The court of appeals ordered this Court to reevaluate its contributory negligence analysis in light of the perceived "tension between its findings of (a) no causal connection between Johnson's employment misrepresentations and the accident, and (b) the 'causal link' between the misrepresentations and the injury." *Johnson II*, 544 F.3d at 304. As should be clear by now, however, the tension is superficial at best. When the Court found that Cenac had "established a causal link between Johnson's misrepresentations and his injuries," it meant only that Cenac had shown that Johnson's old injury and his new injury "were to the same area of his back." *Johnson I*, 468 F.Supp.2d at 833. Cenac was not required to prove anything more, and the Court did not intend to imply anything more. The "causal link" language is admittedly suggestive of traditional causation, and to the extent that the Court uncritically adopted the language of earlier appellate decisions it may be to blame for the confusion. Nevertheless, the choice of label does not alter the fact that Cenac submitted, and this Court found, proof only of a physical proximity between the two injury sites. The "same body part" finding is not tantamount to a finding that Johnson negligently caused his own injury through some act or omission.

It is not enough to resolve the tension between the *McCorpen* analysis and the contributory negligence analysis, however. The Court must still determine whether "Cenac has proved Johnson's causative contributory negligence." *Johnson II*, 544 F.3d at 304. Contributory negligence is not an absolute defense under the Jones Act; rather, a seaman's contributory negligence "may reduce the amount of damages owed proportionate to

his share of fault." *Jauch v. Nautical Services, Inc.*, 470 F.3d 207, 213 (5th Cir. 2006). As with ordinary negligence, a defendant must prove duty, breach, and causation. *See Johnson II*, 544 F.3d at 302. The standard of care is "ordinary prudence under the circumstances," taking into account the seaman's "reliance on his employer to provide a safe work environment [and] his own experience, training, or education." *Id.* (quoting *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 339 (5th Cir.1997) (en banc)). As the Fifth Circuit has recognized, the standard of causation in Jones Act cases is "not demanding."[4] *Id.* at 302. An employer need only prove that the plaintiff's negligence "played any part, even the slightest, in producing the injury." *Id.* (quoting *Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir.1982)).

 It bears emphasis at the outset that the relevant inquiry is whether Johnson's negligent act or omission caused or contributed to the accident, not whether the resulting injury was an aggravation of a pre-existing injury. It is basic tort law that the defendant takes the plaintiff as he finds him, and that the defendant may not escape liability for the consequences of his tortious conduct simply because the plaintiff is unusually fragile. *See* RESTATEMENT (SECOND) OF TORTS § 461 ("The negligent actor is subject to liability for harm to another although a physical condition of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should have foreseen as a probable result of his conduct."); *Vos-*

*burg v. Putney*, 80 Wis. 523, 50 N.W. 403 (1891). For this reason, juries in this circuit are instructed that they "may award damages for aggravation of an existing disease or defect or activation of any such latent condition resulting from physical injury to the plaintiff." FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS: CIVIL § 15.5 (2006). The plaintiff's compensatory damages may be reduced to account for any portion of his injury that pre-existed the defendant's tortious conduct, but the aggravated portion is properly attributed to the defendant. *See id.* ("If you find that there was such an aggravation, you should determine, if you can, what portion of the plaintiff's condition resulted from the aggravation, and make allowance in your verdict only for the aggravation.").

The question before the Court is thus threefold: (1) which of Johnson's acts or omissions might have caused the accident; (2) whether Johnson's conduct in performing those acts or omissions fell below the appropriate standard of care; and (3) whether the acts or omissions did in fact cause the accident, "in whole or in part." 45 U.S.C. § 51. There are several ways in which Johnson might have negligently caused his injuries. First, as Cenac argued at trial, Johnson might have been negligent in "deciding to move the hose without being ordered to do so." *Johnson I*, 468 F.Supp.2d at 825. The Court rejected this possibility, finding that the decision was not negligent because "the task was squarely within the ambit of Johnson's duties." *See id.* The Fifth Circuit did not question the finding on appeal. *See John-*

---

**4.** As the Fifth Circuit also recognized, three members of the Supreme Court have recently suggested that the "relaxed" standard of causation used by the lower courts in Jones Act and Federal Employers' Liability Act cases is based on a misreading of the relevant precedent. *See Norfolk Southern Ry. Co. v. Sorrell,* 549 U.S. 158, 172–77, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007) (Souter, J, concurring). Neither a majority of the Supreme Court nor a panel of the Fifth Circuit has endorsed this argument, however, and so this Court adheres to the "relaxed" standard.

*son II*, 544 F.3d at 302–04. Second, Johnson might have been negligent in "the manner in which he carried the crossover hose." *Johnson I*, 468 F.Supp.2d at 825. The Court rejected this possibility as well, finding that Cenac had sent "mixed messages as to the company's instructions on how to carry a crossover hose." *See id.* The Fifth Circuit did not question the finding on appeal either. *See Johnson II*, 544 F.3d at 302–04.

■■■■ Another possibility, which the Fifth Circuit focused on, is that Johnson was contributorily negligent in "willfully concealing his previous injuries during Cenac's employment application process." *Id.* at 302. As the Fifth Circuit noted, it "seems likely that Johnson would never have been employed by Cenac had he revealed the previous injuries, and, having misrepresented himself onto the payroll, he set himself up for the sort of aggravating injury found by the district court." *Id.* at 303. This phrasing suggests two separate ways in which Johnson's misrepresentations might have caused his injury. First, the misrepresentations could be considered a "but for" cause of the injuries because, as the Fifth Circuit said, Johnson would probably not have been hired if he had told the truth, and he therefore would not have been on board the vessel at the time of the accident. Second, it is possible that Johnson negligently caused his injury by "deliberately exposing himself to heavy labor with a weakened back" and by failing to mitigate a dangerous situation by warning Cenac of his condition. *Id.* at 304.

The Court finds that the first theory—that Johnson would not have been hired but for his willful misrepresentations—is foreclosed by Supreme Court precedent and by the Fifth Circuit's mandate. It is

true that this Court found in its *McCorpen* analysis that Johnson's misrepresentations "were material to [Cenac's] hiring decision" and that the Cenac physician "would not have approved [Johnson] for employment" had he known of the pre-existing injuries. *Johnson I*, 468 F.Supp.2d at 833. In a sense, then, it could be said that Johnson caused his own injuries because he would not have been on the vessel in the first place if he had not deceived his employer.

This argument cannot prevail, however. Were the Court to accept it, any material deception on an employment application would amount to contributory negligence as a matter of law because, by definition, the employer would not have hired the applicant if it had known of the material information. Such a result would be contrary to the Supreme Court's decision in *Still v. Norfolk & Western Ry. Co.*, 368 U.S. 35, 82 S.Ct. 148, 7 L.Ed.2d 103 (1961), and the Fifth Circuit's mandate in this case, which both indicate that contributory negligence in misrepresentation cases must be evaluated on a case-by-case basis. In *Still*, for example, the Supreme Court held that it was error for the trial court to direct a verdict for the defendant on the ground that "the undisputed evidence showed that the railroad had been deceived into hiring [the plaintiff] by [plaintiff's] fraudulent misrepresentations as to his health and that these misrepresentations had a direct causal connection with the injuries upon which [plaintiff's] action is based."[5] *Still*, 368 U.S. at 36–37, 82 S.Ct. 148. Although the Court recognized that "evidence of a pre-existing physical defect" might be relevant to a contributory negligence analysis in some instances, it specifically noted that this would be the

---

**5.** Courts applying the Jones Act "follow" cases applying the Federal Employers' Liabili-

ty Act. *Johnson II*, 544 F.3d at 301 n. 2.

case only "in appropriate circumstances," suggesting a case-by-case inquiry. *Id.* at 46 n. 14, 82 S.Ct. 148. Similarly, in this case, the Fifth Circuit noted that contributory negligence "*may* be found" in concealment cases and referred to the "*potential* for contributory negligence." *Johnson II,* 544 F.3d at 303–04 (emphasis added).

It is clear from these cases that contributory negligence does not follow as a matter of law every time the plaintiff "misrepresent[s] himself onto the [employer's] payroll" and then suffers an accident. *Id.* at 303. Indeed, if material pre-employment misrepresentations required a finding of contributory negligence in all cases, the Fifth Circuit would have said so in the mandate and would have remanded with instructions for this Court to address apportionment of fault rather than causation. The Fifth Circuit did not do so, and this Court therefore rejects the notion that Johnson negligently caused his injury simply by deceiving Cenac. "Even under the Jones Act ... a party must establish more than mere 'but for' causation." *Id.* at 302.

■ The second theory—that Johnson caused his injury by "deliberately exposing himself to heavy labor with a weakened back," *id.* at 304—requires careful consideration. The Fifth Circuit noted on appeal that "it appears that contributory negligence may be found where a seaman has concealed material information about a pre-existing injury or physical condition from his employer; exposes his body to a risk of reinjury or aggravation of the condition; and then suffers reinjury or aggravation [of the] injury." *Id.* at 303–04. This passage could be interpreted as an endorsement of the "but for" theory discussed above, but the Fifth Circuit concluded that "but for" causation is not by itself sufficient to support a finding of contributory negligence. *See id.* at 302. Instead, what the Fifth Circuit appears to

have meant is that contributory negligence may be found when a plaintiff (1) knows, or should have reason to know, that certain working conditions pose an unreasonable risk of reinjury; (2) imprudently exposes his weakened body to those conditions; and (3) fails to seek relief from the dangerous conditions by informing his superiors of his pre-existing injury. Causation may then be found if the plaintiff's negligent actions led to his accident or reinjury.

It is this "unreasonable exposure" theory that formed the basis for decision in the cases relied upon by the Fifth Circuit. In *Savoie v. Otto Candies, Inc.,* 692 F.2d 363 (5th Cir.1982), for instance, the court upheld a jury finding of contributory negligence as to a plaintiff with a pre-existing leg injury. The plaintiff had unreasonably exposed himself to harm by working in a "muddy, uneven marsh" and failed to mitigate the risk by informing his employer of the pre-existing injury. *Savoie,* 692 F.2d at 371–72. The court stated the applicable rule of law as follows:

> Where a seaman knowingly exposes himself to conditions of employment while aware of an illness or disability which makes those conditions unsafe to him, or where a seaman has the possibility of securing relief from unsafe conditions by informing his superiors of them, but continues to work without doing so, he may be found to be contributorily negligent.

*Id.* at 372. Finding that it was reasonable for the jury to conclude that the plaintiff did one or both of those things, the court upheld the contributory negligence finding. *Id.*

Similarly, in *Gavagan v. United States,* 955 F.2d 1016 (5th Cir.1992), the court of appeals upheld the district court's finding that a plaintiff with "wire, pins, and a screw" in his hand negligently contributed

to his own injury by "fail[ing] to act in a manner that would minimize the dangers of reinjuring his hand." *Gavagan*, 955 F.2d at 1017, 1018. The district court noted that the plaintiff, who reinjured his hand while turning a valve, knew that "he did not have full use of his hand and that he should not strain his hand or place undue stress upon it." *Id.* at 1018. In addition, the plaintiff "failed to disclose the impaired state of his finger to either the chief mate or the boatswain." *Id.* On this basis, the district court found that the plaintiff negligently caused his injury, and the court of appeals affirmed without further discussion. *See id.* at 1019.

The difference between *Savoie* and *Gavagan*, on the one hand, and the present case, on the other, is plain. In the two Fifth Circuit cases, the plaintiffs (1) undertook activities that they knew were risky in light of their pre-existing injuries, (2) failed to seek relief from the dangerous situation by informing their superiors of their condition, and (3) ended up being injured precisely because their weakened bodies were unable to handle the stress of the activity in question. The third feature is particularly important. There is no indication that the activities at issue in *Savoie* and *Gavagan*—cleaning duck blinds and turning valves, respectively—would

have injured a healthy person. The plaintiffs' pre-existing injuries were the very reason that the accidents occurred.

In the present case, by contrast, the Court found no evidence that Johnson's pre-existing back condition made it risky for him to carry the crossover hose or that his injured back caused the accident. *See Johnson I*, 468 F.Supp.2d at 826; *id.* at 823 ("Despite his previous injuries, Johnson had performed work that involved heavy lifting from 2002 until his December 14, 2005 accident without any difficulty."); *see also Johnson II*, 544 F.3d at 303 ("It is likely true, as the district court found, that Johnson's weakened back did not cause Celestine to drop the 175–pound hose they were both carrying."). Although Johnson failed to inform Cenac's physician that he had a bulging disc in his back from a previous accident, the physician performed a complete physical examination, including a full range of motion test and spine x-rays, in both 2003 and 2005, and he found no reason for concern.[6] Moreover, Johnson testified at trial that he had moved the crossover hose many times without any problems and that he had performed "very physically demanding" tasks on a daily basis.[7] In fact, this Court found that he had "performed work that involved heavy lifting from 2002 until his December 14,

---

**6.** Deposition Testimony of Dr. Mark Walker. *See also* Medical Examination Form Dated 5/22/03 (noting "normal" spine motion; "normal" lumbar spine x-ray); Pre–Employment Physical Form Dated 4/07/05 (same).

**7.** Trial Testimony of Leroy Johnson. The full exchange was as follows:
Q: The job duties that you described to the court, how physically demanding were those job duties?
A: They were very physically demanding.
Q: Can you give the court some examples of more of the physically demanding tasks that you had to do?
A: We would splice line, carry two-to-three-inch lines the length of the barge. We

would throw two-and-a-half-inch lines to the dock to tie the barge off. We would use a needle gun to chip and paint overhead off a ladder or handrail for a long period of time. Climb a ladder to wash the top of the boat with a five-gallon bucket of water in one hand and the other hand holding the ladder.

. . .

Q: And how often would you actually get involved in picking up and connecting a crossover hose?
A: I would say two times a trip, you know, from one—when we arrive to one dock, we would put a hose on and take it off, so you know, at least twice for one transfer.

2005 accident without any difficulty." *Johnson I*, 468 F.Supp.2d at 823.

The evidence was clear that Louis Celestine dropped the crossover hose because he negligently tripped on a hatch cover and that Johnson was suddenly forced to bear the entire 175–pound weight of the hose. It is possible, if unlikely, that Johnson's condition caused his injury in the sense that a seaman without a pre-existing back injury would have been able to bear the entire weight of the hose without a problem. But Cenac presented no evidence to support this theory, and it is not unreasonable for the Court to have found that even healthy seamen would be injured when hit with such an intense force.

To summarize, then, Cenac did not carry its burden of proving that Johnson's misrepresentations and/or his "persist[ence]" in an unreasonably dangerous activity, *Savoie*, 692 F.2d at 371, caused the crossover hose accident. Cenac argued two types of contributory negligence at trial: first, that Johnson acted negligently in his decision to move the hose and in the way he moved it,[8] and, second, that "but for [Johnson's] willful concealment of his injury he would not have been working on the M/V URSULA CENAC and therefore he would not have been injured on December 14, 2005."[9] The Court rejected the first theory as unsubstantiated by the evidence, and the Fifth Circuit did not question the Court's finding. The second theory is insufficient as a matter of law because "a party must establish more than mere 'but for' causation." *Johnson II*, 544 F.3d at 302. The Court has now considered a third theory—that Johnson caused his own injury by exposing himself to a dangerous situation and failing to seek relief by informing Cenac of his pre-existing injury—

and found it to be unsupported by the evidence. This last holding is not in tension with the Court's finding that there was a "causal link" between Johnson's misrepresentations and his new injury because the *McCorpen* "connection" analysis asks only whether the two injuries affected the same body part.

Cenac bore the burden of proving contributory negligence. It did not do so at the December 2006 trial, and the Court must therefore find that Leroy Johnson was not contributorily negligent.

### III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that judgment be re-entered for plaintiff Leroy Johnson, as described in this Court's order of December 27, 2006.

---

8. *See* Joint Pre–Trial Order, R. Doc. 41 at 18–19.

9. Pre–Trial Memorandum by Cenac Towing, R. Doc. 42 at 11.